**Reversed and Remanded and Majority and Dissenting Opinions filed July 28, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00208-CV

---

## LETICIA LOYA, Appellant

## V.

## MIGUEL ANGEL LOYA, Appellee

---

**On Appeal from the 257th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-32502**

---

## M A J O R I T Y   O P I N I O N

In this appeal, a wife asserts that the trial court erred in granting summary judgment to her husband on her post-divorce proceeding to divide an employment-related bonus the husband received nine months after their divorce. Because we conclude that the bonus was not considered, divided, or partitioned in the divorce proceedings and the wife raised a fact issue concerning the characterization of this bonus, we reverse and remand for further proceedings.

BACKGROUND

Miguel Angel Loya and Leticia B. Loya married in July 1980. In April 2008, Leticia filed for divorce. During their marriage and afterward, Miguel worked for Vitol, Inc. As an employee of Vitol, Miguel was eligible for, but not entitled to, a discretionary bonus:

> You will continue to be considered for an annual bonus based on various performance parameters considered by [Vitol]. Bonuses are completely at the discretion of [Vitol] and, if paid, are typically paid in March/April each year.

During the couple's marriage, Miguel earned this discretionary bonus regularly. According to Miguel, his bonus paid in 2010 was awarded to him shortly before the divorce and was placed into a bank account that was awarded to Leticia in the parties' Mediated Settlement Agreement (MSA). Thus, before executing the MSA, Miguel contends that Leticia was aware of the potential that Vitol would pay Miguel a bonus in 2011.

On June 13, 2010, the parties signed the MSA, which also served as "an immediate partition":

> Agreement Supersedes Prior Agreements and Serves as an Immediate Partition. The provisions of this Agreement shall be effective immediately as a contract, shall supersede any temporary orders or other agreements of the parties (except the parties' partition agreement of September of 2009 and orders or agreements concerning the children & trust, which shall remain in place) with respect to the subject matter hereof, and shall serve as a partition of all property set forth herein to the person to whom such property is awarded. All future income of a party and/or from any property herein awarded to a party is portioned to the person to whom the property is awarded. *All future earnings from each party are partitioned to the person providing the services giving rise to the earnings.* These partitions are to be effective pursuant to Section 4.102 of the Texas Family Code, and in this respect, each party waives further disclosure of property

and debts of the other party. Any spouse holding title to property herein awarded or confirmed to the other spouse shall hold such property as a constructive trustee until such time that tile or other muniment to the property can be transferred to the spouse to whom such property is awarded or confirmed.

(emphasis added). On June 14, Leticia presented the MSA to the trial court and requested that it be entered. The trial court orally announced the parties' divorce that day on the record. The court also set an entry date and ordered the parties to draft their final documents.

Shortly thereafter, Leticia filed a motion to set aside the MSA. In this motion, she urged that the MSA should be set aside because there was no mutual assent or meeting of the minds because the parties "did not reach an agreement as to the division of . . . the community's interest in Miguel Angel Loya's bonus to be paid in 2011, nearly half of which pertains to [Miguel]'s services through June 13 2010."[1] Leticia urged that the MSA "did not address or divide the community's portion of the bonus." On June 22, 2010, the trial court denied Leticia's motion and signed the parties' final decree of divorce, which incorporated an agreement incident to divorce (the AID) setting out the terms of the MSA.[2] The AID and the divorce decree both provided that any community assets of the parties not divided by the parties' agreements would be subject to future division.[3] Leticia did not appeal from the final divorce decree.[4]

---

[1] Leticia also asserted there was no division of jewelry valued at nearly $400,000 located in Miguel's office that was not included in his sworn inventory and appraisement.

[2] Neither Leticia nor Miguel signed the decree of divorce or the agreement incident to divorce. But the trial court found in the divorce decree that "the unsigned agreement incident to divorce sets forth the parties' division of property and other matters contained in their mediated settlement agreement signed on June 13, 2010[,] and approved and rendered as a final judgment of this Court on June 14, 2010."

[3] The AID was not signed by either party; thus, it has no effect as a partition agreement. *See* Tex. Fam. Code Ann. § 4.105(a) (providing that a partition or exchange agreement is not

3

On March 15, 2011, Miguel received a bonus from Vitol in the gross amount of $4.5 million; the amount received net of taxes and retirement was slightly over $2.85 million. In June 2012, Leticia filed an original petition for post-divorce division of property, seeking to divide Miguel's 2011 bonus.[5] Miguel moved for partial summary judgment on Leticia's claim on grounds that: (1) the bonus was not community property subject to division by the trial court; (2) if the bonus was subject to division, it was partitioned to Miguel pursuant to the MSA; and (3) Leticia's claim was barred by principles of res judicata because the trial court considered the division of the bonus through Leticia's motion to set aside the MSA. Leticia responded, asserting that genuine issues of material fact exist concerning whether (a) the bonus was community property subject to division, (b) the bonus was awarded to Miguel in the divorce, and (c) Leticia's suit was barred by res judicata.

The trial court considered the partial summary judgment motion on October 29, 2012. It signed an interlocutory order granting Miguel partial summary judgment on December 7, 2012, which left open the issue of Miguel's claim for attorney's fees and sanctions. The trial court signed a final take-nothing order on Leticia's petition for post-divorce division of property on January 6, 2014, after

enforceable if the party against whom enforcement is requested proves, *inter alia*, that he or she did not sign the agreement voluntarily).

[4] Leticia additionally filed a motion to modify, correct or reform the judgment or alternatively, motion to clarify the judgment. In this motion, Letitia asserted that Miguel failed to include jewelry valued at nearly $400,000 on his sworn inventory and appraisement and that the final divorce decree should be modified to state that this jewelry was not included in the MSA division granting Miguel all the jewelry in his "possession, custody, or control." The trial court denied the motion to modify because this property had already been partitioned in the MSA and imposed sanctions on Letitia in August 2010. These sanctions, however, were reversed by this court on appeal. *See Loya v. Loya*, No. 14-12-00385-CV, 2013 WL 830940, at *1 (Tex. App.—Houston [14th Dist.] 14-10-00864-CV, Mar. 5, 2013, no pet.) (mem. op.).

[5] Leticia originally sought division of other alleged community property, but later amended her petition to include only division of the bonus.

Miguel abandoned his claim for attorney's fees. Leticia filed a motion for new trial; our record contains no ruling on this motion. This appeal timely followed.

ANALYSIS

Leticia challenges the summary judgment in four issues. In her first two related issues, she asserts that Miguel failed to conclusively prove that the bonus was his separate property; alternatively, she asserts that there is a fact issue concerning the characterization of the bonus. In her third issue, Leticia urges that the bonus was not partitioned in the decree of divorce. Finally, in issue four, she contends that res judicata does not apply because the divorce decree did not award the bonus to anyone. Because we conclude that the bonus was not considered, disposed of, or partitioned in the divorce decree, and that Leticia raised a fact issue concerning the characterization of the bonus, we reverse the summary judgment and remand to the trial court for further proceedings.

## A.    Standard of Review and Applicable Law

We review summary judgments de novo, and where, as here, the trial court grants the judgment without specifying the grounds, we will affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Evidence is conclusive only if reasonable people could not differ in their conclusions . . . ." *City of Keller v. Wilson*, 168

5

S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We review the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848; *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

Community property consists of the property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code Ann. § 3.002. Property possessed by either spouse during or on dissolution of marriage is presumptively community property. *Id.* § 3.003(a). Further, "earnings during marriage, even during the pendency of divorce proceedings, are community property." *Marriage of O'Brien*, 436 S.W.3d 78, 84 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A spouse's separate property consists of the property owned or claimed by the spouse before marriage, acquired by the spouse during the marriage by gift, devise, or descent, and the recovery for personal injuries sustained by the spouse during marriage (except for recovery for loss of earning capacity). Tex. Fam. Code Ann. § 3.001. Finally, "[e]ither spouse may file a suit . . . to divide property not divided or awarded to a spouse in a final decree of divorce." *Id.* § 9.201(a). In an action to divide community property post-divorce, the petitioner bears the burden to prove that the trial court did not consider or dispose of the property at issue. *See Brown v. Brown*, 236 S.W.3d 343, 348–49 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

**B.    Application**

We first consider Leticia's third and fourth issues, in which she challenges the summary judgment on res judicata and partition grounds, before turning to the

question of whether she raised a genuine issue of material fact as to the characterization of Miguel's bonus.

>    *1. The bonus was not considered, divided, or partitioned in the divorce decree or other agreements of the parties.*

"Res judicata precludes re-litigation of claims that have been finally adjudicated or that arise out of the same subject matter and could have been raised and litigated in the prior action." *Appleton v. Appleton*, 76 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2002, no pet.). But community property not awarded or partitioned by a divorce decree is subject to later partition between the ex-spouses. *See* Tex. Fam. Code Ann. § 9.201(a); *Appleton*, 76 S.W.3d at 83 (citing *Harrell v. Harrell*, 692 S.W.2d 876 (Tex. 1985); *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. 1970)). Res judicata does not apply to post-divorce partitions where the divorce decree has not disposed of an asset; partition is appropriate in such a situation. *Appleton*, 76 S.W.3d at 83 (citing *Busby*, 457 S.W.2d at 554).

The MSA, the divorce decree, and the AID do not mention the 2011 bonus. Leticia filed a motion to set aside the MSA based in part on the failure of the parties to divide the bonus. Miguel asserts that the trial court thus "considered" the bonus, and res judicata prevents Leticia from re-litigating the division of this property. Importantly, however, Leticia did not seek to divide this property in her motion; instead, she asserted that the MSA should be set aside because of a lack of mutual assent. Indeed, as noted above, Leticia averred that the MSA "did not address or divide the community portion" of the bonus. Because nothing in our record indicates that the trial court considered or disposed of the bonus, Leticia is not barred by res judicata principles from bringing this suit. *See* Tex. Fam. Code Ann. § 9.201(a); *Appleton*, 76 S.W.3d at 83.

Further, the MSA—the only valid partition agreement in this case—provides as follows:

> Income Tax Returns for the Year 2010. For 2010, each party shall file an individual income tax return in accordance with Internal Revenue Code section[] 66(a) as if they were divorced on 12:01 a.m. on January 1, 2010. This [MSA] shall serve as a partition of community income, setting aside to each spouse all income earned by each such spouse and/or attributable to property awarded to each such spouse or confirmed as each such spouse's separate property herein. For the entire year 2010, each spouse shall be solely entitled to take on his/her return any deductions attributable to properties awarded herein to him/her or confirmed as his/her separate property. All overpayments from 2009, all estimated taxes paid relative to the parties' tax liability for 2010, all withholding relative to the parties' tax liability for 2010, plus any other tax deposits made otherwise credited relative to the parties' tax liability for 2010 are allocated solely to Miguel . . . .

Miguel asserts that this language from the MSA partitions his 2010 income to him.[6] We must disagree. First, this provision of the MSA is related to filing of income tax returns: it states that the parties must file individual income tax returns "as if they were divorced" on January 1. It does not expressly partition the parties' income earned in 2010 to that party. And the MSA previously expressly partitioned only all "future earnings" to the "person providing the services giving rise to the earnings." This partition of future earnings has no impact on the characterization of earnings prior to the execution of the MSA; instead, these earnings are properly characterized as community property. *See O'Brien*, 436 S.W.3d at 84.

---

[6] Miguel cites *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 689 (Tex. App.—Austin 2005, pet. denied), for the proposition that "income to be partitioned for 'tax purposes' under the Texas Constitution and the Texas Family Code . . . must be portioned for all purposes, as Texas law does not permit a conditional or selective partition for one purpose but not for another." We find no support for Miguel's proposition in this case, however. *See id.* Indeed, Miguel's reference to *Sheshunoff* is to the background facts in that case; the primary focus of the analysis in that case is on whether Mr. Sheshunoff raised a fact issue concerning the voluntariness of his execution of a post-marital property agreement. *See id.* at 692–701.

8

For the foregoing reasons, we conclude that Miguel's 2011 bonus was not considered, divided, or partitioned in the MSA, the AID, or the divorce decree. Thus, summary judgment was not proper on these grounds, and we sustain her third and fourth issues.

### 2. *Leticia raised a fact issue as to the characterization of the bonus.*

In *Sprague v. Sprague*, this court considered whether bonuses awarded during a marriage for work performed at least partially before the marriage could be established as a spouse's separate property. 363 S.W.3d 788, 801–02 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Evidence of the characterization of these bonuses was improperly excluded from the fact finder. *See id.* We determined that that the exclusion of this evidence probably caused the rendition of an improper judgment because the spouse was entitled to present evidence that portions of these bonuses were awarded based on work performed before the marriage; i.e., this spouse should have been permitted to present evidence that portions of these bonuses were separate property. *See id.* In other words, there is no bright line rule for bonuses: a bonus paid during marriage may be based in part on work performed prior to the marriage, which would make that portion of the bonus a spouse's separate property. It follows from our analysis in *Sprague* that a bonus paid post-divorce, but alleged to be based in part on work performed during the marriage, could be subject to proof that some portion of this bonus is community property.

Here, through his summary judgment evidence, Miguel established that the 2011 bonus was *paid* to him in March 2011, nine months after he and Leticia were divorced. In response to this evidence, Leticia provided an affidavit in which she stated that the MSA "did not address or divide *the community portion of Miguel's bonus for services performed between January 1, 2010 and June 13, 2010, to be*

9

*paid in 2011*" (emphasis added).[7] She further stated that she did not intend that "all income that Miguel earned from January 1, 2010 through June 13, 2010, including his bonus, would be considered his separate property and not subject to division." Viewing this evidence in the light most favorable to Leticia,[8] we conclude that Leticia brought forth some evidence that Miguel's bonus, although paid in 2011, was based in part on work he performed before the parties divorced. *Cf. Sprague*, 363 S.W.3d at 801–02. And Miguel did not establish that the 2011 bonus was not *earned*, at least in part, based on services he provided during the parties' marriage. *See, e.g., Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1992, writ. denied) ("Personal earnings are community property if earned during the marriage."); *see also* Tex. Fam. Code Ann. § 7.003 ("In a decree of divorce or annulment, the court shall determine the rights of both spouses in a pension, retirement plan, annuity, individual retirement account, employee stock option plan, stock option, *or other form of savings, bonus, profit-sharing, or other employer plan* or financial plan of an employee or a participant, regardless of whether the person is self-employed, in the nature of compensation or savings." (emphasis added)). Under these circumstances, we conclude that Leticia raised a genuine issue of fact concerning whether some portion of Miguel's bonus could be

---

[7] Miguel relies on *Echols v. Austron, Inc.*, 529 SW.2d 840, 846 (Tex. App.—Austin 1975, writ ref'd n.r.e.), for the proposition that a bonus paid post-divorce is separate property. In *Echols*, a wife claimed that the trial court "erred in not granting judgment for her for an additional $1,000.00 as the undisputed evidence was that Austron, Inc. paid [her husband] a $2,000.00 bonus that was community property." First, this case is not binding authority on this court. Second, this case was determined based on the proposition that "the rights of the parties were fixed as of the time of the rendition of the judgment." *See id.* More recent cases and changes to the Texas Family Code indicate that this approach to so-called "vested" property rights has been abrogated. *See, e.g., Cearley v. Cearley*, 544 S.W.2d 661, 662, 665–66 (Tex. 1976) (unpaid military retirement benefits that accrue during marriage are subject to apportionment in divorce even though not "vested"); *see also* Tex. Fam. Code Ann. § 7.003.

[8] In reviewing a summary judgment, we must consider the evidence in the light most favorable to the non-movant. *See Mann Frankfort*, 289 S.W.3d at 848; *see also Two Thirty Nine Joint Venture*, 145 S.W.3d at 156.

10

based on services he provided while the ex-spouses were still married; i.e., whether some portion of the bonus is community property.

Our dissenting colleague appears to urge that "future earnings" are measured solely by the ex-spouse's receipt of the "earnings." This construction ignores the plain language of the MSA, which, as excerpted above, partitions future earnings to the "person providing the services giving rise to the earnings." Thus, if Miguel's services during the marriage gave rise, in part, to the 2011 bonus, then some portion of the 2011 bonus could be characterized as community property. We express no opinion as to whether any portion of the 2011 bonus was based on services Miguel provided during his marriage to Leticia. Instead, we conclude that Miguel has not established as a matter of law that his 2011 bonus was based entirely on services he provided after the parties' divorce.

For the foregoing reasons, on this record, summary judgment was not proper on the characterization of Miguel's bonus, and we sustain Leticia's second issue.[9]

### CONCLUSION

Having sustained Leticia's second, third, and fourth issues, we reverse the trial court's judgment and remand for further proceedings.


/s/    Sharon McCally
        Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally (Frost, C.J., dissenting).

---

[9] Our resolution of Leticia's second, third, and fourth issues makes it unnecessary to address her first issue. *See* Tex. R. App. P. 47.1.