**Miguel Angel LOYA, Petitioner,**

v.

**Leticia B. LOYA, Respondent**

No. 15-0763

Supreme Court of Texas.

Argued March 21, 2017

OPINION DELIVERED: May 12, 2017

Rehearing Overruled September 22, 2017

Wallace B. Jefferson, Rachel A. Ekery, Alexander Dubose Jefferson & Townsend LLP, Austin, Grady Reiff, Randall B. Wilhite, Fullenweider Wilhite, P.C., Houston, for Petitioner.

Richard R. Orsinger, Orsinger Nelson Downing & Anderson LLP, San Antonio, Lynn Kamin, Jenkins & Kamin, L.L.P., Houston, for Respondent.

Justice Lehrmann delivered the opinion of the Court.

Mediated settlement agreements are valuable tools in the effort to amicably resolve contentious family-law disputes. These agreements further the express legislative policy—especially critical in family law—of "encourag[ing] the peaceable resolution of disputes," including "the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM. CODE § 154.002. In the underlying divorce proceedings, the parties entered into a mediated settlement agreement (MSA) after nearly two years of litigation. The central issue is whether the MSA partitioned a discretionary employee bonus the husband received nine months after the decree was entered. The husband contends that the bonus constitutes future income and earnings that the MSA partitioned to him, while the wife contends that part of the bonus was earned during the marriage and constitutes undivided community property. The trial court granted summary judgment for the husband, but the court of appeals reversed. Because we agree with the husband that the MSA partitioned the bonus, we hold that the trial court properly granted summary judgment and therefore reverse the judgment of the court of appeals.

## I. Background

Miguel Angel Loya and Leticia B. Loya married in 1980. Miguel began working at Vitol Inc.—an energy and commodity trading company—in 1992. As a term of his at-will employment, Miguel was eligible for, but not entitled to, an annual discretionary bonus. The relevant provision reads: "You will continue to be considered for an annual bonus based on various performance parameters considered by the company. Bonuses are completely at the discretion of the Company and, if paid, are typically paid in March/April each year." During the couple's marriage, Miguel received a bonus each year.

Leticia petitioned for divorce in 2008. The parties agreed on the division of $10 million of community assets ($5 million to each spouse), but were unable to resolve their remaining differences. The trial court ordered mediation, resulting in a mediated settlement agreement signed by Leticia, Miguel, and their respective attorneys on June 13, 2010.

The MSA stated that it "shall serve as a partition of all property set forth herein to the person to whom such property is awarded." The MSA explicitly partitioned numerous bank accounts, retirement plans, motor vehicles, furnishings, jewelry, antiques, household items, and liabilities. Miguel attested, and Leticia does not dispute, that the bonus he received from Vitol in 2010 (before the MSA was finalized) was deposited into an account awarded to Leticia. In addition, the MSA partitioned future income and earnings as follows:

All future income of a party and/or from any property herein awarded to a party is partitioned to the person to whom the property is awarded.... All future earnings from each party are partitioned to the person providing the services giving rise to the earnings.

The MSA also contained detailed provisions regarding the parties' respective income-tax liabilities. With respect to their 2010 taxes, the agreement provided in part:

For 2010, each party shall file an individual income tax return ... as if they were divorced [at] 12:01 a.m. on January 1, 2010. This Mediated Settlement Agreement shall serve as a partition of community income, setting aside to each spouse all income earned by each such spouse and/or attributable to property awarded to each such spouse or con-

firmed as each such spouse's separate property herein.

Finally, the MSA required the parties to submit to binding arbitration with respect to drafting disputes, interpretation issues, and "issues regarding the intent of the parties as reflected in" the MSA.

On June 14, 2010, the day after the parties executed the MSA, Leticia presented the agreement to the trial court, and the court orally rendered judgment on the MSA at that time. Tex. Fam. Code § 6.602(c) ("If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on [the MSA]. . . ."). While the parties were in the process of drafting the divorce decree and the agreement incident to divorce (AID), disagreements arose over the meaning of several MSA provisions. Consequently, a week after the trial court rendered judgment on the MSA, the parties went to arbitration on these points, of contention. One of the disagreements related to the partition of future income and earnings. Leticia's proposed AID awarded to Miguel "future earnings of Miguel Loya arising from services from June 13th, 2010, forward." Miguel responded that this provision did not comport with the MSA and proposed language awarding him " 'all future income and earnings of Miguel Loya,' period." The arbitrator orally ruled that "the MSA language is going to be placed into the AID." In a subsequent email, the arbitrator directed the parties to include the following language in the AID: "All future income and earnings are partitioned as of June 13, 2010[;] however for tax purposes the partition of income for 2010, is as of Jan. 1, 2010." The arbitrator confirmed: "I want it to read that way."

The day after the arbitration hearing, Leticia moved to set aside the MSA, arguing in pertinent part that there was no mutual assent to it because "the parties did not reach agreement as to the division of . . . the community's interest in Miguel['s] bonus to be paid in 2011, nearly half of which pertains to [Miguel's] services through June 13, 2010." The trial court denied the motion and signed the final divorce decree. Leticia did not appeal.

On March 15, 2011, Miguel received a $4.5 million bonus from Vitol, netting approximately $2.85 million after deductions for retirement and taxes. In June 2012, Leticia filed an original petition for post-divorce division of property, alleging that the decree failed to divide the parties' marital interest in Miguel's 2011 bonus relating to his services between January 1 and June 13, 2010. Miguel moved for partial summary judgment, arguing: (1) no part of the bonus was community property subject to division; (2) to the extent the bonus was subject to division, the MSA awarded it to Miguel because it qualified as future earnings or, alternatively, because the MSA "retroactively partitioned earned income back to January 1, 2010"; and (3) Leticia's claim was barred by res judicata because the trial court considered the division of the bonus when it denied Leticia's motion to set aside the MSA. The trial court granted the motion, leaving open the parties' requests for attorney's fees. Miguel dropped his fee request, and the trial court signed a final take-nothing judgment on Leticia's petition for post-divorce division of property.

A divided court of appeals reversed and remanded, concluding "that the bonus was not considered, disposed of, or partitioned in the divorce decree, and that Leticia raised a fact issue concerning the characterization of the bonus." 473 S.W.3d 362, 366 (Tex. App.—Houston [14th Dist.] 2015). The court reasoned that the "partition of future earnings has no impact on the characterization of earnings prior to the execution of the MSA; instead these

earnings are properly characterized as community property" because Leticia produced evidence that the bonus "was based in part on work [Miguel] performed before the parties divorced." *Id.* at 368–69. The dissenting justice opined that the MSA's "unambiguous language" clearly encompassed the bonus, partitioning it to Miguel as his future income and earnings. *Id.* at 373 (Frost, C.J., dissenting). We granted Miguel's petition for review.

## II. Discussion

### A. Characterization of the Bonus

Miguel's primary argument in the trial court, which he pursues as an alternative argument in this Court, was that the 2011 bonus did not constitute community property and thus was not subject to division in the divorce. Leticia cites well-settled law to argue that the bonus was community property because it compensated Miguel in part for services performed during the marriage. *See Cearley v. Cearley*, 544 S.W.2d 661, 666 (Tex. 1976) (holding that unmatured retirement benefits earned during marriage "constitute a contingent interest in property and a community asset"). Miguel responds that the purely discretionary nature of the bonus rendered it a mere expectancy until the Vitol board voted to award it in 2011, distinguishing the bonus from other types of deferred compensation that qualify as community property.

Whether the portion of a purely discretionary bonus based on services performed during the marriage constitutes community property is an important issue, but one we need not reach in this case. As discussed below, we resolve this case on the ground that the MSA partitioned the bonus. Whether the bonus qualifies as community property does not affect this determination.

### B. The MSA Partitions the 2011 Bonus

Under the Texas Family Code, "a mediated settlement agreement, meeting certain statutory formalities, is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012); Tex. Fam. Code § 6.602. Because an MSA is a contract, we look to general contract-interpretation principles to determine its meaning. *See* Tex. Civ. Prac. & Rem. Code § 154.071(a) ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."). When construing a contract, "a court must ascertain the true intentions of the parties as expressed in the writing itself." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

In this case, the parties dispute whether the MSA partitioned the 2011 bonus. Miguel contends that the MSA partitioned all future income and earnings to him. He further argues that the bonus constitutes future income and earnings because he had neither received the bonus nor did he have any enforceable right to it when the MSA was executed. Leticia responds that future income and earnings refer only to compensation for work performed after the MSA was signed. She contends the 2011 bonus was based in part on services provided before the divorce, and that the portion of the bonus earned during marriage cannot be future income or earnings under the agreement. Because

the MSA did not specifically address the disposition of future monies received for work performed during marriage, and the bonus was not otherwise expressly partitioned in the MSA, Leticia concludes that the portion of the bonus that compensated Miguel for work done during the marriage is undivided community property subject to subsequent division.

As noted, the MSA provision addressing future income stated: "All future income of a party and/or from any property herein awarded to a party is partitioned to the person to whom the property is awarded." Because the MSA required the parties to submit drafting disputes and interpretation issues to binding arbitration, the parties attended arbitration to resolve their disagreement about the meaning of this language. To the extent the MSA's partition of future income was unclear, the arbitrator clarified that "[a]ll future income and earnings are partitioned as of June 13, 2010."

The MSA does not define the phrase "future income" or either of its components. Black's Law Dictionary broadly defines "income" as "[t]he money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like." *Income*, BLACK'S LAW DICTIONARY (10th ed. 2014). "Future" is commonly defined as "existing or occurring at a later time." *Future*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2000); *see also Future*, THE COMPACT OXFORD ENGLISH DICTIONARY (reprint 1993) (2d ed. 1991) (defining "[f]uture" as "[t]hat is to be, or will be,

hereafter"). It follows that income includes all forms of payment received, and that future income means payment received at a later time. The plain meaning of these terms clearly encompasses the 2011 bonus—an amount of money received by Miguel months into the future, after the divorce was final. Thus, the future income that the MSA partitioned to Miguel included the 2011 bonus. Regardless of whether part of the bonus compensated for work done during marriage, the MSA partitioned *all* future income, which includes future payments for work done in the past. Whether "future earnings" refers only to money received for work done in the future or includes money to be received in the future for work done during the marriage is irrelevant to this analysis because of the broad definition of "future income."

Leticia argues that the arbitrator's reference to June 13, 2010, as the partition date indicates that the 2011 bonus was not partitioned because part of the bonus was for work Miguel performed before that date. We disagree. To the contrary, the inclusion of this date clearly indicates that all money Miguel received after June 13, 2010, was partitioned to him, regardless of when the underlying work was done.[1]

The known terms of Miguel's employment with Vitol lend further context to our interpretation of the MSA. Under those terms, Miguel would "be considered" for an annual bonus, "completely at the discretion of [Vitol]" and "typically" paid, if at all, in March or April. Further, according to Vitol's chief financial officer, the compa-

---

1. Miguel alternatively argues that the MSA's tax provision stating "each party shall file an individual income tax return ... as if they were divorced [at] 12:01 a.m. on January 1, 2010" indicates that all property was partitioned as of January 1, 2010, meaning the MSA partitioned all monies earned or received by him during any part of 2010. This argument is unavailing. The tax provision addresses the parties' calculation of their 2010 income taxes and filing of their 2010 returns, and has no bearing on the partition of the 2011 bonus. Further, the arbitrator confirmed that the January 1 date was "for tax purposes."

ny's board "declared" Miguel's 2011 bonus at a meeting in March 2011. Quite simply, when the parties signed the MSA in June 2010, no 2011 bonus existed. *See Lewis v. Vitol, S.A.*, No. 01-05-00367-CV, 2006 WL 1767138, at *5 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (examining nearly identical language in a contract dispute between Vitol and a former employee and holding that the employee was not "contractually entitled" to the "purely discretionary" bonus). As the dissenting justice in the court of appeals aptly noted in this case, even if Vitol "considered work Miguel performed before June 2010 in awarding the March 2011 bonus, none of the bonus came into existence until" the board declared it, well after June 2010. 473 S.W.3d at 373. As such, the purely discretionary bonus constitutes future income.

### III. Conclusion

Like any contract, the express terms of a mediated settlement agreement control. Moreover, the MSA in this case dictates how the parties must resolve disputed interpretations of its terms. To the extent the MSA did not clearly partition future income, the arbitrator clarified that all of the parties' future income was partitioned as of June 13, 2010. Miguel's future income encompasses the 2011 discretionary bonus, which was neither owed nor paid to him until nine months after the MSA was signed. Accordingly, we reverse the court of appeals' judgment and render judgment for Miguel.