**Affirm and Opinion Filed June 9, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00987-CV

### IN THE INTEREST OF J.Y.O., A CHILD

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-53096-2017**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Garcia
Opinion by Justice Smith

This appeal involves the trial court's Final Decree of Divorce signed on August 17, 2020 in which the trial court characterized and divided several marital assets. Wife raises five issues on appeal. She challenges the trial court's characterization and award of the marital residence, Husband's performance bonus she alleges he earned during marriage, and their 401(k) retirement accounts. Wife also challenges whether the trial court failed to consider $140,000 in debt when dividing the marital estate resulting in a grossly disproportionate division in Husband's favor.

We reverse the trial court's judgment awarding Husband a one hundred percent separate property interest in the marital residence and render judgment

awarding the marital residence to Husband and Wife as tenants in common with each owning an undivided one-half interest in the marital residence as their separate property. We reverse the trial court's judgment awarding Husband $311,788.24 as his separate property interest in his Bank of America 401(k) retirement account because the trial court mischaracterized the property, and we remand to the trial court for reconsideration of a just and right division of the marital estate in accordance with this opinion. In all other respects, we affirm the trial court's final judgment.

## Background

Husband and Wife married on September 18, 2010. Husband owned the marital residence as his separate property prior to marriage; however, they later executed a deed in which they both became owners. Wife claims that Husband gifted her a one half interest as separate property.

During the marriage, Husband worked for Bank of America, and Wife worked for the City of Dallas. Both contributed to retirement plans during their employment. Husband also received a yearly discretionary bonus as part of his compensation package. Wife challenges the separate property characterization of Husband's discretionary bonus that he received post-divorce and portions of his Bank of America 401(k) retirement account.

After the birth of their son, Wife chose to stay home, and Husband became the sole earner. Wife cashed out her City of Dallas retirement plan to pay some of their debts, including Husband's student loans.

–2–

For reasons unnecessary to disposition of this appeal, Husband and Wife became discontented in their marriage. During their separation, Wife returned to work for the City of Dallas. The parties dispute whether she contributed to a retirement plan upon her return.

On June 1, 2017, Wife filed an original petition for divorce indicating the marriage was insupportable, in part, because of discord or conflict of personalities. Wife requested the court award her a disproportionate share of the estate because of various reasons, including a disparity of earning power. She further requested confirmation of certain separate property.

Husband filed his counterpetition alleging the marriage had become insupportable due to discord and conflict of personalities. He likewise requested confirmation of certain separate property. Both parties filed subsequent amended petitions and inventories for their requested division of assets.

Following a bench trial, the trial court rendered the divorce on December 9, 2019. The trial court signed the final divorce decree on August 17, 2020. Relevant to this appeal, it found that the marital residence, Husband's discretionary performance bonus, and a portion of the Bank of America 401(k) held with Merrill Lynch was Husband's separate property. The court found that Wife's City of Dallas 401(k) plan, totaling $64,683.69, was her separate property. Each party was responsible for their own attorney's fees, expenses, and costs. Wife filed this appeal.

**Standard of Review**

When reviewing an alleged property characterization error, we must determine whether a trial court's finding of separate property is supported by clear and convincing evidence and whether the characterization error, if established, was an abuse of discretion. *Sink v. Sink*, 364 S.W.3d 340, 343–44 (Tex. App.—Dallas 2012, no pet.); *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied). Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Sink*, 364 S.W.3d at 343 (citing *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985)). We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property. *Id.* We will reverse the trial court's ruling only if the record demonstrates that the trial court clearly abused its discretion, and the error materially affected the just and right division of the community estate. *Id.*

In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Id.* In reviewing the

evidence for legal sufficiency, we consider all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *See Sink*, 364 S.W.3d at 344. We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the record, a factfinder could reasonably form a firm conviction or belief that the allegations were proven. *Id*.

## Marital Residence

Wife contends the trial court abused its discretion by awarding Husband a one hundred percent separate property interest in the marital residence because the evidence indicated he gifted her a fifty-percent interest as her separate property. Husband responds the evidence was sufficient to support the trial court's characterization of the marital residence such that there was no abuse of discretion.

Under the family code there is a presumption that property possessed by either spouse at the dissolution of the marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). Only community property is subject to the trial court's just and right division. *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied).

The party who seeks to assert that property is his separate property must prove its separate character by clear and convincing evidence. TEX. FAM. CODE ANN. 3.003(b). "Clear and convincing evidence must outweigh evidence that would satisfy the preponderance standard, but it need not be unequivocal or undisputed." *Lee v. Lee*, No. 02-18-00006-CV, 2019 WL 3024478, at *4 (Tex. App.—Fort Worth July 11, 2019, no pet.) (mem. op.). A trial court has no discretion to divest a spouse of his separate property. *Barnard*, 133 S.W.3d at 789.

The characterization of property as either community or separate is determined by the inception of title to the property. *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). Inception of title occurs "when a party first has a right of claim to the property by virtue of which title is finally vested." *Id.* The major consideration in determining the characterization of property as community or separate is the intention of the spouses by the circumstances surrounding the inception of title. *Id.*

To overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. *Id.* However, real property gifted by one spouse to another during marriage is the recipient spouse's separate property. TEX. CONST. art. 16, § 15. A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Magness*, 241 S.W.3d at 912. The elements of a gift are (1) the intent to make a gift; (2) delivery of the property; and (3) acceptance of the

–6–

property. A deed for property from one spouse as grantor to the other spouse as grantee creates a presumption the grantee spouse received the property as separate property by gift. *Id.*

The parties disagree as to whether parol evidence may be introduced to rebut the presumption. Wife contends that because the deed was unambiguous on its face and Husband did not plead ambiguity or that it was procured by accident, mistake, or fraud, the trial court abused its discretion by not construing the unambiguous deed as transferring an undivided one-half interest to her as separate property. *See, e.g.*, *Raymond v. Raymond*, 190 S.W.3d 77, 79 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (concluding parol evidence is not admissible to vary the terms of an unambiguous document). Husband responds the presumption can be rebutted by evidence of the absence of intent to make a gift. *See, e.g.*, *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975) (stating presumption can be rebutted by evidence clearly establishing there was no intention to make a gift); *Rivers v. Rivers*, No. 03-17-00690-CV, 2018 WL 6626718, at *1 (Tex. App.—Austin Dec. 19, 2018, no pet.) (mem. op.).

Here, Husband testified he bought the marital residence five years before marriage and refinanced it twice: 2008 and during the marriage in 2016. Although Wife was listed as grantor and grantee on the 2016 deed, Husband testified she was never an owner and he thought it was "strange" she was listed as a grantor. He did not know how she was listed on the deed, and it caused him concern that there may

have been confusion at the title office. While Husband expressed reservations about the deed, he never testified that he did not intend to gift Wife an interest in the marital property.

In contrast, Wife testified that she had conversations with Husband that she "wanted to feel like the home was ours." Her preference was to buy another home to own jointly, but Husband preferred not to move. She testified Husband assured her he would take care of the situation and make sure she knew the home was also hers. Per the deed, Wife did not provide any consideration because "It was a gift." Husband put her name on the deed "just to give [her] that security."

Acting as the factfinder, the trial court had the right to determine the credibility of the witnesses and the weight that it wished to give to their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The trial court was also entitled to resolve any conflicts in the testimony by deciding to believe some or all of a witness's testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). However, here there was no conflict in evidence to resolve because Husband failed to present any evidence rebutting the presumption he gifted one half of the marital residence to Wife. He never asserted his lack of intent to gift her the property, only that it was "strange" she was on the deed. Thus, the evidence Husband did present was not "of a substantive and probative character to support the decision." *See In re Marriage of C.A.S.*, 405 S.W.3d 373, 383 (Tex. App.—Dallas 2013, no pet.).

Because the trial court had insufficient evidence upon which to exercise its discretion, it erred in its application of that discretion. *Id*.; *see also Sink*, 364 S.W.3d at 344 (considering the evidence in the light most favorable to the judgment could the factfinder reasonably form a firm believe or conviction its finding was true). Thus, the trial court abused its discretion by awarding Husband one hundred percent of the marital residence as his separate property. We sustain Wife's first issue.

**Discretionary Bonus**

Wife argues the trial court abused its discretion by awarding Husband a 2019 discretionary bonus as his separate property because the evidence conclusively established he earned the bonus during marriage even though he received it post-divorce. Husband responds controlling case law is to the contrary; therefore, the trial court did not abuse its discretion by awarding him the discretionary bonus.

During the divorce hearing, Wife asked the court to award her half of Husband's anticipated bonus as community property. Husband objected that he had yet to receive the bonus, and the court "cannot divest separate property money he received in years after the divorce." Other than stating that Husband typically received a yearly bonus in February, neither party provided additional evidence about the anticipated bonus. The trial court did not rule on its characterization and division.

On February 12, 2020, the trial court held a hearing in which Wife asked the trial court to order Husband to tender to the court's registry any bonus money he

received pending the court's ruling on the characterization of the bonus. Wife anticipated Husband would receive a bonus, if any, on February 15, 2020.

Andrea Laporta, the compensation executive for the consumer and small business banking organization, testified during the hearing. She confirmed that Husband would receive a $140,000 bonus from Bank of America on February 15, 2020 "as long as he remains an active employee." However, if Husband was no longer an employee as of the date of the distribution, regardless of resignation or firing, then he was not entitled to receive it. She confirmed that the board determined the bonus amount, if any, in mid to late November 2019 based on work Husband performed during the 2019 fiscal year; however, the board did not approve it until January 2020.

Laporta explained that Husband's incentive plan indicated that disbursement of the bonus was at the sole discretion of Bank of America. It was not tied to any commissioned work, and until the bonus was received, it was an "expectancy," not an entitlement. The court ultimately awarded the February 14, 2020 bonus as Husband's separate property.

In a decree of divorce or annulment, the court shall determine the rights of both spouses in a pension, retirement plan, annuity, and bonus, among other things. *See* TEX. FAM. CODE ANN. § 7.003. Generally, personal earnings are community property if earned during marriage. *See Williams v. Williams*, 246 S.W.3d 207, 215 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

–10–

Both parties rely on *Loya v. Loya*, 473 S.W.3d 362, 364 (Tex. App.—Houston [14th Dist.] 2015), *rev'd on other grounds*, 526 S.W.3d 448 (Tex. 2017), which is the most recent Texas Supreme Court opinion discussing a discretionary bonus received by a spouse post-divorce.

In *Loya*, the appellate court considered whether the husband's bonus, which he received post-divorce, was community property because he provided some of the services giving rise to the bonus during marriage. 473 S.W.3d at 379. Based on the summary judgment evidence presented, the appellate court concluded that the wife raised a genuine issue of material fact concerning whether some portion of the bonus was based on services he provided during the marriage thereby making a portion of the bonus community property. *Id.* A dissenting justice concluded the bonus was the husband's separate property based on a mediated settlement agreement (MSA), which provided that any future earnings and income were partitioned to the husband. *Id.* at 370 (Smith, C.J., dissenting). Because the husband received the bonus post-divorce, the dissent reasoned the entire bonus fell within the MSA's provision relating to future income and earnings and disagreed with the majority's conclusion that the MSA did not consider, divide, or partition the bonus. *Id.*

The Texas Supreme Court reversed the court of appeals and resolved the case on the ground that the MSA partitioned to the husband future income and earnings, which included the bonus. 526 S.W.3d at 451. The supreme court stated that whether the bonus qualified as community property did not affect its determination.

–11–

526 S.W.3d at 451. The court avoided resolution of whether the portion of a purely discretionary bonus based on services performed during the marriage constituted community property, but acknowledged it "is an important issue, but one we need not reach in this case." 526 S.W.3d at 451.

The supreme court indicated, however, that the terms of the husband's employment also supported its interpretation that the broad definition of "future earnings" in the MSA encompassed all the money the husband received after the partition date regardless of when the underlying work was performed. *Id*. at 452. Specifically, the court noted that the husband's annual bonus was completely discretionary and "typically" paid, if at all, in March or April. *Id*. "Quite simply, when the parties signed the MSA in June 2010, no 2011 bonus existed" and did not come into existence until the board declared it. *Id*. "[T]he purely discretionary bonus constitutes future income." *Id*.

While we recognize the supreme court decided *Loya* based on the MSA, which is distinguishable to the present facts, we nonetheless find its dicta instructive. Husband's bonus was likewise completely discretionary and typically paid in February. It was contingent on the board's approval and Husband's continued employment with Bank of America. If Husband was no longer an employee as of the date of the distribution, regardless of resignation or firing, than he was not entitled to receive it. "Quite simply," when the divorce was rendered, the bonus did not exist, and the "purely discretionary bonus constitute[d] future income." *Id*.; *see*

–12–

*also Loaiza v. Loaiza*, 130 S.W.3d 894, 909–10 (Tex. App.—Fort Worth 2004, no pet.) (concluding that major league baseball player's right to payment under his contract did not accrue until he performed his services and because payments were due after the date of divorce, the trial court correctly characterized them as separate property) (citing *Cunningham v. Cunningham*, 183 S.W.2d 985, 986 (Tex. Civ. App.—Dallas 1944, no writ) (acknowledging "other cases have characterized future earnings similarly")).

Husband's right to the bonus vested when he received it. At that time, he was no longer married, and Wife was not entitled to any division of the property. *See Loaiza*, 130 S.W.3d at 909 ("A spouse is only entitled to a division of property that the community owns at the time of divorce."). In reaching this conclusion, we are unpersuaded by Wife's reliance on *Sprague v. Sprague*, 363 S.W.3d 788 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) and *Cearley v. Cearley*, 544 S.W.2d 661, 665–66 (Tex. 1976).

In *Sprague*, the Fourteenth Court of Appeals remanded the case based on its conclusion that issues of fact were required to be resolved to determine how the bonus should be characterized. 363 S.W.3d at 802. The appellate court did not determine whether the bonus was community or separate property. *Id.*

In *Cearley*, the supreme court considered the characterization of a serviceman's military pension and concluded it constituted a contingent interest in property and a community asset subject to division "which may or may not bloom

–13–

into full maturity at some future date." 544 S.W.2d at 665–66. During the marriage, the husband had invested twenty-four years of effort toward his future interest in his military pension, and the pension was considered a form of deferred compensation which he earned during each month of his military service. *Id*. at 665. We do not find the characterization of a military pension, which was earned during each month of service over a period of twenty-four years and considered deferred compensation, to be of assistance to the facts of this case involving a discretionary yearly bonus.

The trial court did not abuse its discretion by awarding Husband the February 14, 2020 discretionary bonus as his separate property. We overrule Wife's second issue.

## Husband's Retirement Account

Wife argues the trial court abused its discretion by finding and awarding Husband $311,788.24 of his Bank of America 401(k) as his separate property without any evidence of tracing. Husband responds the trial court acted within its discretion.

Under Texas law, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. *Boyd*, 131 S.W.3d at 612. To overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. *Id*. "The burden of tracing is a difficult, but not impossible, burden to sustain." *Id*. Tracing involves

–14–

establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Id.* Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Id.*

A spouse's interest in a retirement or pension plan is regarded as a mode of employee compensation earned over the length of a given period of employment. *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App.—Fort Worth 2002, pet denied). Because benefits in a retirement or pension plan are regarded as earned over a period of time, Texas courts have fashioned apportionment formulas to allocate to the community estate benefits earned during the marriage. The formula used depends upon whether the plan is a "defined contribution plan" or a "defined benefit plan." *Id.*

It is undisputed that Husband's Bank of America 401(k) was a defined contribution plan. In such plans, the employee has an individual account and makes periodic contributions to the account, which may be matched by the employer. *Id.* at 835. To determine the portion as well as the value of a defined contribution plan that is community property, courts subtract the amount contained in the plan at the time of the marriage from the total contained in the account at divorce. *Id.* Thus, the equation for calculating the non-employee spouse's share of a defined

contribution plan is x = (value of plan at divorce – value of plan at marriage). *Boyd*, 67 S.W.3d at 409. Any benefits that accrue in a defined contribution pension plan during the marriage are community property subject to division in a divorce. *Sanchez v. Wales*, No. 05-20-00485-CV, 2022 WL 1055376, at *7 (Tex. App.— Dallas Apr. 8, 2022, no pet.) (mem. op.).

Here, Husband was employed with Bank of America for eight years (from 2002 to 2010) before marriage. It is undisputed that Husband made contributions to a 401(k) prior to marriage. Wife introduced paystubs from 2005 to 2010 showing he contributed $20,648.23 to the retirement account. Husband neither presented evidence to the contrary nor presented evidence of contributions prior to 2005 because he admitted some account statements were unavailable because they were too old. Thus, the value of the 401(k) owned at the time of marriage was never identified.

Instead, there was evidence Husband opened a 401(k) in 2015 with a $124,323.36 deposit. The record contains no evidence indicating whether the deposit was from community property or separate property. Husband provided no evidence tracing the character of the funds deposited in 2015. At the time of the divorce, the value of the 401(k) had increased through a diversified portfolio, including employer contributions, to $353,091.43. He provided no evidence considering the growth of the account through these diversified investments. Thus, all those earnings belonged to the community estate at the time of the divorce. *Id*.

(stating benefits that accrue during marriage are community property). It was not enough to show that the $124,323.36 deposit could have been separate funds and could have included the $20,648.23 from the retirement account Husband had prior to marriage. *See Moroch v. Collins*, 174 S.W.3d 849, 855 (Tex. App.—Dallas 2005, pet. denied) ("When tracing separate property, it is not enough to show that separate funds could have been the source of a subsequent deposit of funds."). Thus, Husband failed to overcome the community property presumption with legally sufficient evidence, and any doubt as to the character of the property should have been resolved in favor of the community estate. *Id*. at 856.

To the extent that the trial court simply took the value of the account on the date of divorce, subtracted Husband's contributions during the marriage and then awarded the remaining $311,778.24 as his separate property, the trial court abused its discretion in its characterization and division of the property. *See, e.g.*, *Sanchez*, 2022 WL 1055373, at *8. We further conclude that the trial court's abuse of discretion affected the just and right division of the community estate and remand is necessary for the trial court to reconsider division of the community estate. We sustain Wife's third issue.

**Wife's Retirement Account**

Wife argues the trial court abused its discretion by valuing and awarding her a City of Dallas 401(k) because the uncontroverted evidence established that the account did not exist at the time of divorce, and there was insufficient evidence to

support the value of the retirement account on the date of divorce. Husband responds the evidence was legally and factually sufficient to support the trial court's finding that Wife contributed $64,683.69 to five retirement accounts during the marriage.

A fundamental tenet of the community property system is that whatever is acquired during marriage by the talent, toil, or other measure of productivity of either spouse is community property. *McClary*, 65 S.W.3d at 834. Thus, any spouse's personal income is community property. *Id.* Deferred compensation plans such as defined benefit plans and defined contribution plans are community property to the extent they are attributable to employment during the marriage. *See Boyd*, 67 S.W.3d at 406–07. A defined contribution plan is one in which the employer and/or employee make contributions to an individual account set up for the employee. *Boyd*, 67 S.W.3d at 407 n.4.

Wife worked for the City of Dallas prior to J.Y.O.'s birth and then transitioned to being a stay-at-home mother. She testified that Husband organized the paperwork so that they could cash out her 401(k) to pay down debts, including his student loans. At the time of the divorce, she denied having any retirement accounts with the City, and the inventory she submitted to the trial court did not reference any City of Dallas or other retirement plans in her name. Husband, however, submitted an inventory listing five separate retirement accounts from the City of Dallas, but listed the community contributions as "unknown."

–18–

At trial, Husband submitted Wife's paystubs into evidence showing contributions into each account. He also submitted a summary of her contributions, which totaled $64,683.69.

Wife denied having any retirement accounts with the City of Dallas despite the paystubs Husband introduced into evidence. She contended the paystubs were from before J.Y.O.'s birth in 2014. However, the first paystub was dated September 24, 2010 and the last one was dated October 25, 2019. The paystubs showed Wife's contributions to the accounts. She did not provide any documentation contradicting the paystubs. Instead, she testified that the "confusion" regarding the status of any retirement contributions occurred because when she returned to work in 2017, the City "mistakenly reenrolled" her for her prior benefits. She noticed the mistake in 2018, brought it to the payroll department's attention, and was allegedly reimbursed approximately $2,000.

Acting as the factfinder, the trial court had the right to determine the credibility of the witnesses and the weight that it wished to give to testimony. *See City of Keller*, 168 S.W.3d at 819. The trial court was also entitled to resolve any disputed facts and conflicts in testimony. *See McGalliard*, 722 S.W.2d at 697; *Sink*, 364 S.W.3d at 344. Considering the evidence in the light most favorable to the judgment, the trial court could reasonably have formed a firm belief or conviction that Wife's City of Dallas retirement accounts existed and she contributed $64,683.69 to the accounts. Thus, the evidence was legally sufficient to support the

–19–

trial court's judgment. After giving due consideration to the evidence that the trial court could reasonably have found to be clear and convincing, we likewise conclude the evidence was factually sufficient to support the trial court's judgment. Wife's fourth issue is overruled.

## Division of Debt: Wife's Attorney's Fees

In Wife's final issue, she argues the trial court abused its discretion by failing to consider the $140,000 she incurred in attorney's fees as debt when dividing the marital estate. She asserts this resulted in a grossly disproportionate division in favor of Husband. Husband responds the trial court acted within its broad discretion by not including outstanding attorney's fees in the community liabilities.

Although there is no statute specifically authorizing an award of attorney's fees in a divorce proceeding, the trial court may within its sound discretion award attorney's fees. *See  Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied); *see also C.A.S.*, 405 S.W.3d at 386. An attorney's fee is but another element for the court to consider in dividing the marital estate. *Mandell*, 310 S.W.3d at 541. That is, in a divorce suit, the trial court has the equitable power to award either spouse attorney's fees as a part of the just and right division of the marital estate. *See, e.g.*, *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).

Wife acknowledges that a trial court need not divide community property equally, but rather the division must be equitable. She contends the trial court abused its discretion by making a property division that was manifestly unjust and unfair

and operated to punish her for her fault in the divorce. She specifically contends the trial court did not factor in the attorney's fees she owed when making a just and right division of the assets. We disagree.

The trial court concluded that each party was responsible for their own attorney's fees. The Final Decree further stated that Wife "shall pay, as a part of the division of the estate . . . [a]ll debts, charges, liabilities, and other obligations incurred solely by the wife unless express provision is made in this decree to the contrary." The final decree specifically included in this allocation one hundred percent of the $12,000 loan from her parents for attorney's fees. Thus, the record indicates the trial court considered Wife's attorney's fees debt when making its just and right division of the assets.

In reaching this decision, we reject Wife's assertion that the trial court abused its discretion by ignoring Husband and Wife's unequal financial conditions and earning abilities, ignoring the amount of community assets Husband spent while the divorce was pending, and finding her at fault for the divorce because of adultery when there was also evidence that Husband had an affair during the marriage. The parties litigated their divorce for over two years in which the trial court observed their behavior and made credibility determinations. While the record indicates Husband and Wife had unequal financial conditions based on their salaries at the time of the divorce, there is no evidence supporting Wife's claim that they had unequal earning abilities. *See Murff*, 615 S.W.2d at 699 (considering earning

capacity, abilities, and education when exercising discretion in dividing marital estate). Likewise, determining who was at fault for the divorce based on the evidence presented was within the trial court's sound discretion. *Id.* Wife's belief that the trial court sought to punish her for her fault in breaking up the marriage by not including her attorney's fees in the community liabilities is pure speculation.

To the extent Wife argues it was Husband's actions that drove up litigation costs, the trial court heard evidence that Wife had more than one attorney before the divorce was finalized, and the parties engaged in mediation and attempted to settle the case; however, Wife cancelled a second day of mediation. Thus, the trial court could reasonably have found that Wife's actions prolonged the contentious litigation.

The trial court, as the factfinder, considered witness credibility and weighed the evidence before dividing the community liabilities. We cannot say the trial court acted unreasonably, arbitrarily, or without reference to any guiding principles by failing to include Wife's attorney's fees in the community liabilities. *See Sink*, 364 S.W.3d at 343 (citing *Downer*, 701 S.W.2d at 241–42). We overrule Wife's fifth issue.

**Conclusion**

We reverse the trial court's order awarding Husband a one hundred percent separate property interest in the marital residence and render judgment awarding the marital residence to Husband and Wife as tenants in common with each owning an

–22–

undivided one-half interest in the marital residence as their separate property. We reverse the trial court's judgment awarding Husband $311,788.24 as his separate property interest in his Bank of America 401(k) retirement account because the trial court mischaracterized the property, and we remand to the trial court for reconsideration of a just and right division of the marital estate in accordance with this opinion. In all other respects, we affirm the trial court's final judgment.

200987f.p05

/Craig Smith/
CRAIG SMITH
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF J.Y.O., A
CHILD

No. 05-20-00987-CV

On Appeal from the 469th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 469-53096-
2017.
Opinion delivered by Justice Smith.
Justices Carlyle and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part, **REVERSED** and **RENDERED** in part, and **REVERSED** and **REMANDED** in part.

We **REVERSE** that portion of the trial court's judgment awarding appellee Hakan Ali Oksuzler a one hundred percent separate property interest in the marital residence and **RENDER** judgment awarding the marital residence to appellee Hakan Ali Oksuzler and appellant Lauren Michelle Oksuzler as tenants in common with each owning an undivided one-half interest in the marital residence as their separate property.

We **REVERSE** the trial court's judgment awarding appellee Hakan Ali Oksuzler $311,788.24 as his separate property interest in his Bank of America 401(k) retirement account. We **REMAND** to the trial court for reconsideration of a just and right division in accordance with this opinion. In all other respects, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear their own costs of this appeal.

Judgment entered this 9th day of June 2022.