# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-18-00118-CV
---

**Eric Jonjak, Appellant**

**v.**

**Kathye Marlene Griffith, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-FM-15-003489, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Eric Jonjak appeals from a divorce decree dissolving his marriage to Kathye Marlene Griffith and dividing their marital property. Jonjak asserts the decree divides Jonjak's retirement account contrary to the terms of the parties' mediated settlement agreement (MSA). Jonjak also challenges a qualified domestic relations order (QDRO) implementing that division. We will modify the decree and the QDRO and affirm as modified.

## BACKGROUND

Jonjak filed for divorce from Griffith in 2015 on the grounds of insupportability. On June 1, 2017, the parties signed an MSA dividing most of their marital property. In relevant part, the MSA states Griffith "will receive $962,000 from the Bog Farm Profit Sharing 401k, which is 53% of the value of the account as represented by [Jonjak] on the day of the mediation via QDRO prepared by [Jonjak]." The following day, the parties appeared before a district court and announced

the agreement. The district court pronounced the divorce and instructed Jonjak to prepare a decree consistent with the MSA.

Approximately six months later, both parties filed their own motions to enter judgment, each accompanied by a proposed divorce decree and QDRO. Jonjak's proposed decree awards Griffith $962,000 from his 401k account via QDRO. In contrast, Griffith's proposed decree awards her 53% of Jonjak's 401k account as of June 1, 2017, "together with any interest, dividends, gains, or losses on that amount arising since that date" to be "more particularly defined" in a QDRO.

The district court held a hearing on the competing motions where the parties contested whether the MSA divided the 401k on the date of the mediation or when the court signed a QDRO implementing the division. *See Quijano v. Quijano*, 347 S.W.3d 345, 353–54 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("The purpose of a QDRO is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive all or a portion of the benefits payable to a participant under a retirement plan."). The district court ruled that Griffith "gets $962,000 as of June 1st, 2017, which is the date of the—the date of the mediation." The district court then signed Griffith's proposed decree and QDRO after striking certain language. The decree awards Griffith:

> A portion of Eric Jonjak's retirement benefits in Bog Farm Profit Sharing 401k Acct. No. 803508-00000 arising out of ERIC JONJAK'S employment with Bog Farm as of June 1, 2017, that portion being 53 percent or $962,000, whichever is greater, together with any interest, dividends, gains, or losses on that amount arising since that date and more particularly defined in a set [sic] out in the Qualified Domestic Relations Order signed by the Court in this case.

2

Jonjak filed a timely motion for new trial arguing the district court erred by making the division effective June 1, 2017. He further argued that awarding Griffith "interest, dividends, gains, or losses" on the $962,000 was inconsistent with the MSA, which awarded the specific sum only. The district court issued findings and conclusions explaining why the parties intended to divide the 401k on June 1, 2017, but did not address the award of "interest, dividends, gains, or losses." Jonjak's motion for new trial was overruled by operation of law. This appeal followed.

The plan administrator of the 401k account subsequently determined the order did not meet the statutory requirements of a QDRO.[1] The district court then signed a modified QDRO with substantially the same relevant language as the first.[2] Paragraph 2 provides that Griffith:

> shall be entitled to an interest in the [Bog Farm Profit-Sharing 401k] Plan equal to $962,000 of [Jonjak's] Vested Account Balance under the Plan as of the date of transfer, which is June 1, 2017. [Griffith's] interest in the Plan shall be adjusted for investment earnings and losses allocable thereto in accordance with the terms of the Plan thereafter. [Griffith] shall be permitted to make any elections regarding the form of payment which would be available to a Participant receiving the same payment. Once the benefits assigned to [Griffith] hereunder have been disbursed, [Griffith] shall have no further interest of any kind whatsoever in the remaining balance of [Jonjak's] account(s) under the Plan.

---

[1] The administrator's exact reasons for rejecting the first QDRO do not appear in the record.

[2] If a plan administrator rejects an order for not meeting statutory requirements, "the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order." Tex. Fam. Code § 9.104.

We treat Jonjak's appeal as challenging this QDRO. *See* Tex. R. App. P. 27.3 (providing that when trial court replaces or modifies order that has been appealed, "the appellate court must treat the appeal as from the subsequent order or judgment").

## DISCUSSION

Jonjak argues first that the decree conflicts with the MSA by awarding Griffith "interest, dividends, gains, or losses" on the $962,000 rather than the flat sum. In his remaining issues, Jonjak asserts the district court erred by concluding the MSA divides the 401k effective June 1, 2017. Griffith responds that Jonjak failed to preserve his first issue and that neither issue is meritorious.

### Preservation of Error

We first address whether Jonjak preserved his argument that the divorce decree varies from the terms of the MSA. To preserve an issue for appellate review, a party must make a timely request, motion, or objection stating the grounds for the ruling "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a). The trial court must rule or the party urging the objection must object to its failure to rule. *Id.* The preservation-of-error requirement "conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds." *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). Griffith argues Jonjak never gave the district court this opportunity because he never challenged whether awarding "interest, dividends, gains, or losses" was proper. Jonjak did not explicitly make this argument in the hearing but submitted a proposed decree

4

that awarded Griffith the flat sum of $962,000 and argued she was entitled to only that sum. In his motion for new trial, Jonjak argued more explicitly that this language was improper because the MSA "did not mention what would happen to gains and losses in the account for payment from the 401k." We conclude Jonjak raised this issue clearly enough to preserve error. *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) ("[T]he cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it."); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018) (warning appellate courts against imposing "too strict a view of error preservation").

**The Decree Varies from the MSA**

Having concluded Jonjak preserved error, we turn to whether the divorce decree varies from the MSA. A mediated settlement agreement in a divorce case "meeting certain statutory formalities[] is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (citing Tex. Fam. Code § 6.602). Trial courts have no discretion to modify the MSA's terms but must render judgment "in strict or literal compliance with that agreement." *R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet.). The MSA here meets the statutory requirements, so we look to see whether the divorce decree divides the 401k differently than the parties agreed in the MSA.

"Because an MSA is a contract, we look to general contract-interpretation principles to determine its meaning." *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). When construing a contract we must "ascertain the true intentions of the parties as expressed in the writing itself." *Id.* (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex.

5

2011)).  We do not focus on isolated provisions but "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract." *Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 906 (Tex. 2016) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).  The construction of an unambiguous contact is a question of law reviewed de novo.  *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018).

The MSA provides that Griffith "will receive $962,000 from the Bog Farm Profit Sharing 401k, which is 53% of the value of the account as represented by [Jonjak] on the day of the mediation via QDRO prepared by [Jonjak]."  The agreement does not address gains or losses after that date even though the parties were aware that time would pass before the district court signed the decree.  For example, Jonjak agreed to transfer the utilities in the marital residence to Griffith within thirty days of the mediation and agreed to pay her $20,000 "on the date the Final Decree is entered." The MSA plainly states Griffith is entitled to receive $962,000 by QDRO.  We may not rewrite or add to their agreement to apply the account's gains or losses to Griffith's award.  *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016) ("[I]t is fundamental that 'we may neither rewrite the parties' contract nor add to its language.'" (quoting *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003)).  The divorce decree divides the 401k differently than the MSA.

Griffith argues the error is harmless because even if we modify the decree to award her the flat sum of $962,000, the QDRO could properly "clarify" that the sum fluctuates with the value of the account.   A court that renders a divorce decree has the power to "enter a 'clarifying order' to 'enforce compliance with an insufficiently specific decree,' but 'it may not amend, modify, alter, or change the division of property made or approved in the decree of divorce.'"  *Dalton*

6

*v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018) (quoting *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003)). Griffith argues this Court held in *Vaughn v. Vaughn* that a QDRO could appropriately make the amount of a party's share of a retirement account fluctuate with the value of the account. *See* No. 03-04-00030-CV, 2005 WL 1115965 (Tex. App.—Austin May 12, 2005, no pet.) (mem. op.). The decree in *Vaughn* awarded one spouse a specific percentage of two retirement accounts, the details to be "more particularly defined" in a QDRO. *Id.* at *1–2. The trial court then signed a QDRO awarding the spouse a certain number of the units in each plan "including earnings thereon and less losses thereon." *Id.* This Court held the QDRO appropriately clarified how the spouse would receive her share. *Id.* at *7. Here, by contrast, the parties have already agreed how Griffith will receive her share and what her share will be: $962,000 "via QDRO." This language leaves nothing for a QDRO to clarify regarding how Griffith will receive her share. Thus, even if the decree tracked the language of the MSA, the QDRO could not properly provide that Griffith takes her share "together with any interest, dividends, gains, or losses on that amount." We sustain Jonjak's first two issues.

In his remaining issues, Jonjak challenges the district court's conclusion that the parties intended to divide the 401k on the date of the mediation. However, Jonjak makes this argument only to the extent the court impliedly concluded Griffith was entitled to $962,000 plus "any interest, dividends, gains, or losses" on the date of the mediation. We need not address this argument because, under our holding above, Griffith receives $962,000 from Jonjak's 401k regardless of when the division occurs. We therefore do not decide Jonjak's remaining issues. *See*

7

Tex. R. App. P. 47.1 (requiring appellate courts to hand down opinion "that addresses every issue raised and necessary to final disposition of the appeal").

## CONCLUSION

Jonjak asks us to modify the decree and QDRO to comply with the MSA. *See id.* R. 43.2(b) (allowing appellate court to modify trial court's judgment and affirm as modified). We modify the divorce decree so that paragraph R-5 reads as follows:

> A portion of Eric Jonjak's retirement benefits in Bog Farm Profit Sharing 401k Acct. No. 803508-00000 arising out of ERIC JONJAK'S employment with Bog Farm as of June 1, 2017, that portion being ~~53 percent or~~ $962,000, ~~whichever is greater, together with any interest, dividends, gains, or losses on that amount arising since that date and more particularly defined in a set out in the Qualified Domestic Relations Order signed by the Court in this case~~.

We modify paragraph 2 of the QDRO to state Griffith:

> shall be entitled to an interest in the [Bog Farm Profit-Sharing 401k] Plan equal to $962,000 of [Jonjak's] Vested Account Balance under the Plan as of the date of transfer, which is June 1, 2017. ~~[Griffith's] interest in the Plan shall be adjusted for investment earnings and losses allocable thereto in accordance with the terms of the Plan thereafter.~~ [Griffith] shall be permitted to make any elections regarding the form of payment which would be available to a Participant receiving the same payment. Once the benefits assigned to [Griffith] hereunder have been disbursed, [Griffith] shall have no further interest of any kind whatsoever in the remaining balance of [Jonjak's] account(s) under the Plan.

We affirm the divorce decree and QDRO as modified.

8

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Modified and, as Modified, Affirmed

Filed:   April 12, 2019