# IN THE SUPREME COURT OF TEXAS

No. 18-0262

CHARLES ROBERT HIGHSMITH, PETITIONER,

v.

MEREDITH KATHRYN HIGHSMITH, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

**PER CURIAM**

Under the Texas Family Code, a party to a suit for dissolution of marriage or a suit affecting the parent–child relationship is entitled to judgment on a mediated settlement agreement (MSA) if the agreement satisfies the statute's enumerated requirements. TEX. FAM. CODE §§ 6.602(c), 153.0071(d). The principal issue in this case is whether an MSA that resolves the parties' property-division and conservatorship issues can satisfy all statutory requirements if it is executed before a petition for divorce is filed. Unlike the court of appeals, we hold that it can. However, we agree with the court of appeals that one of the parties to the MSA at issue did not receive proper notice of the hearing at which the trial court rendered judgment on the MSA. Accordingly, we reverse the court of appeals' judgment in part and remand the case to the trial court for further proceedings.

Charles and Meredith Highsmith married in 2004 and had two children. In 2014, Meredith decided to end the marriage, and she located a mediator to assist the parties in working out the terms of their divorce. On February 11, 2015, the Highsmiths attended mediation without attorneys and executed a written agreement titled "Mediated Settlement Agreement."

The Highsmiths' agreement provided for immediate partition of the marital estate and settled all child custody issues, making Charles and Meredith joint managing conservators with Charles possessing the right to designate the children's primary residence. Additionally, Meredith was given extended possession rights and, in exchange for allowing Charles to keep the marital home, was not required to pay child support. The agreement stated that a divorce action "[would] be filed by [Meredith] within 10 days of [the] agreement" and would be finalized "not before May 1, 2015 but . . . at any time thereafter." Meredith also "agree[d] to appear in court . . . and secure rendition of judgment in accordance with [the] agreement." The MSA stated in underlined, capital letters that it was not subject to revocation.

On February 20, nine days after the Highsmiths executed the agreement, Charles filed a divorce petition in Travis County.[1] The petition twice referenced the parties' MSA, requesting that the court approve the agreement and render judgment consistent with it. Meredith filed an answer on March 30 that contained a general denial but did not reference the MSA.

On May 1, Charles and his attorney appeared in court for the uncontested docket. During that brief hearing, Charles testified as to the insupportability of the marriage and requested that the court approve the terms contained in the Highsmiths' MSA. At the end of the hearing, the

---

[1] The record does not reflect why Charles filed the petition instead of Meredith.

trial court orally rendered judgment on the MSA. Meredith did not receive notice of the hearing and thus did not attend.

On May 20, Meredith filed a motion to set aside the judgment and, in the alternative, a motion for new trial, as well as a motion to revoke the MSA. She asserted in those post-judgment motions that (1) the MSA was unenforceable because it did not comply with the Family Code's requirements—namely, the MSA was signed before a suit for divorce was in existence, (2) the May 1 hearing violated Meredith's due process rights because she did not receive the requisite forty-five days' notice under Texas Rule of Civil Procedure 245, and (3) Charles breached the agreement when he filed for divorce despite the express language that Meredith would file suit and obtain rendition on the MSA. The trial court denied the motions and entered a final decree of divorce on July 2, 2015, incorporating the MSA's terms. In its order denying Meredith's motion to revoke the MSA, the trial court specifically found that the MSA "is [e]nforceable" pursuant to chapter 6 of the Family Code.

The court of appeals reversed, disagreeing with the trial court's conclusion that the parties' MSA was enforceable under section 6.602. ___ S.W.3d ___, ___ (Tex. App.—Amarillo 2017). Instead, the court held that under the section's plain language, a pending suit for divorce is a "threshold requirement" for obtaining a statutorily binding MSA; thus, because the parties entered into their agreement *before* either had filed for divorce, the agreement was merely a contract subject to the same defenses as any other contract. *Id.* at ___. The court also held that Meredith was denied due process when Charles failed to give her notice of the May 1 hearing. *Id.* at ___. The court explained that, because Meredith made an appearance by filing an answer, she was entitled to forty-five days' notice under Rule 245. *Id.* at ___. The court further rejected

3

the notion that the lack of notice constituted harmless error because Meredith's post-judgment motions indicated that, had she received proper notice, she would have timely challenged the agreement's enforceability. *Id.* at ___. Charles filed a petition for review with this Court, contending that the parties' MSA meets the Family Code's requirements and that Meredith was not entitled to notice of the hearing.

We first address the MSA's compliance with the Family Code. Section 6.602, located in the chapter governing divorce suits, provides in pertinent part:

> (a) On the written agreement of the parties or on the court's own motion, the court may refer a suit for dissolution of the marriage to mediation.
>
> (b) A mediated settlement agreement is binding on the parties if the agreement:
>
>> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>>
>> (2) is signed by each party to the agreement; and
>>
>> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.
>
> (c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

TEX. FAM. CODE § 6.602(a)–(c). Section 153.0071 contains similar language applicable to an MSA in a suit affecting the parent–child relationship (SAPCR). *See id.* § 153.0071(c)–(e).[2]

---

[2] Section 153.0071 states in pertinent part:

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent–child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

4

It is well-settled that an MSA that meets section 6.602's statutory formalities "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012); *see also Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). Unlike with other settlement agreements in the family law context, the trial court is not required to determine if the agreed property division is "just and right" before approving an MSA that satisfies the statutory requirements, nor may the court conduct an independent best-interest inquiry regarding conservatorship. *See Milner*, 361 S.W.3d at 618; *see also In re Lee*, 411 S.W.3d 445, 455 (Tex. 2013). In other words, a statutorily compliant MSA is binding on both the parties and the trial court, subject to a few narrow exceptions.[3]

The parties do not dispute that the MSA in this case satisfied the statutory formalities contained in section 6.602(b): the agreement contains the required prominently displayed statement of irrevocability; both parties signed the agreement; and no attorney signatures were required because no attorneys were present when the parties signed. Meredith nevertheless argues that the agreement does not comply with section 6.602 because a pending suit for divorce is an additional threshold requirement for a statutorily binding MSA. The court of appeals

---

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and
>
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.
>
> (e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

TEX. FAM. CODE § 153.0071(c)–(e).

[3] *See, e.g.*, *id.* § 153.0071(e-1) (enumerating exceptions for certain instances of family violence and sexual abuse); *see also In re Lee*, 411 S.W.3d at 463–64, 466 (Guzman, J., concurring, and Green, J., dissenting) (in which a majority of justices opined that a trial court may decline to render judgment on a statutorily compliant MSA when it would endanger a child's safety and welfare). Meredith asserted in the trial court that the MSA was unenforceable because it "endanger[ed] the safety and welfare of the children."

5

agreed, relying primarily on the language in subsection (a) that the trial court "may refer *a suit for dissolution of marriage* to mediation." ___ S.W.3d at ___ (quoting TEX. FAM. CODE § 6.602(a) (emphasis added)). That language, along with the statute's "placement in the Family Code among the specific statutes related to alternative dispute resolution [such as arbitration] that plainly require a suit be pending before alternative dispute resolution is undertaken," convinced the court "that the Legislature also intended that a mediated settlement agreement be negotiated *after* a suit is filed." *Id.* at ___.

We cannot agree with that conclusion, which requires reading a requirement into the statute that simply is not there. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) ("A court may not judicially amend a statute by adding words that are not contained in the language of the statute."). As an initial matter, subsection (a) does not "require" anything: it provides that the trial court "may" refer a suit to mediation on agreement of the parties or the court's own motion. TEX. FAM. CODE § 6.602(a). And subsection (a)'s use of the word "suit" is unremarkable, as courts have no authority or involvement in a dispute before suit is filed. *See Dennis v. Smith*, 962 S.W.2d 67, 74 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (holding that a trial court has no authority to order mediation as a prerequisite to the filing of a motion to modify in a SAPCR proceeding). Section 6.602(a), then, merely describes the circumstances in which the court may refer spouses to mediation while a divorce suit over which the court has jurisdiction is pending—it says nothing about voluntary, pre-suit mediation proceedings. Nor does it purport to place any conditions on the parties' ability to execute a binding MSA. In sum, we cannot read subsection (a)'s grant of referral authority to the trial court as a restriction on divorcing parties' right to engage in binding mediation.

6

By contrast, subsection (b) plainly and succinctly provides the requirements that an MSA must meet in order to be "binding" on the parties. TEX. FAM. CODE § 6.602(b). And when an MSA "meets the requirements of [section 6.602], a party is entitled to judgment on the [MSA]." *Id.* § 6.602(c). Reading the statute as a whole, we hold that those requirements do not include a pending suit at the time the MSA is signed.

Other courts of appeals, addressing the related issue of whether a referral to mediation by the trial court is a prerequisite to a binding MSA in divorce and SAPCR proceedings, have similarly concluded that section 6.602(a) and its sister statute governing SAPCRs do not impose additional requirements that must be satisfied to entitle a party to judgment on an MSA. *See Cojocar v. Cojocar*, No. 03-14-00422-CV, 2016 WL 3390893, at *2–3 (Tex. App.—Austin June 16, 2016, no pet.) (mem. op.) (rejecting the argument that a trial court's referral to mediation under section 6.602(a) constitutes one of the "requirements of the section" that must be met to produce a statutorily binding MSA); *In re J.A.W.-N.*, 94 S.W.3d 119, 121 (Tex. App.—Corpus Christi 2002, no pet.) (holding similarly with respect to section 153.0071). The *J.A.W.-N.* court noted the absence of authority "preclud[ing] parties from agreeing to mediate without involving the court" and highlighted the chilling effect that imposing such a requirement would likely have on the mediation process. 94 S.W.3d at 121.[4]

The courts' sound reasoning in *Cojocar* and *J.A.W.-N.* applies equally here. Just as the Legislature chose not to make a court referral a prerequisite to a binding MSA, it also chose not to make a pending suit a prerequisite to a binding MSA. *See Zanchi v. Lane*, 408 S.W.3d 373,

---

[4] The party contesting the MSA in *J.A.W.-N.* also argued that section 153.0071 applied only to "suits" and therefore did not apply to the "post-suit dispute" at issue in that case. 94 S.W.3d at 123. The court of appeals rejected that argument, which is similar to Meredith's argument here, but with very little analysis. *See id.*

7

380 (Tex. 2013) ("If the Legislature had intended to require a claimant to serve an expert report in accordance with Rule 106, it clearly knew how to do so."). Rather, a mediated settlement agreement is binding on the parties if it satisfies section 6.602(b)'s three enumerated requirements—a prominent statement of irrevocability, signatures of the parties, and signatures of the attorneys (if any) present when the MSA was signed—and, absent narrow exceptions, a party is "entitled to judgment" on an MSA that meets those requirements.[5] TEX. FAM. CODE § 6.602(c).

This conclusion is consistent with both section 6.602's plain language and the Legislature's stated policy of "encourag[ing] the peaceable resolution of disputes, with special consideration given to disputes involving the parent–child relationship, including the mediation of issues involving conservatorship, possession, and support of children." TEX. CIV. PRAC. & REM. CODE § 154.002. Accordingly, we hold that the lack of a pending suit at the time the Highsmiths signed their MSA does not preclude the MSA from meeting the requirements of section 6.602.

We next address the court of appeals' holding that Meredith was deprived of her right to notice of the hearing at which the trial court rendered judgment in the divorce proceeding. Texas Rule of Civil Procedure 245 provides:

> The Court may set *contested* cases . . . with reasonable notice of *not less than forty-five days* to the parties of a first setting for trial, or by agreement of the parties . . . . *Noncontested* cases may be tried or disposed of at *any time* whether set or not, and may be set at any time for any other time.

---

[5] As in *Milner*, we need not and do not address whether an MSA that complies with the statutory formalities may nevertheless be set aside on the ground that it is illegal or was procured by fraud, duress, or coercion. 361 S.W.3d at 619. Nor do we address whether the Highsmiths' MSA may or should be set aside on any ground other than the lack of a pending suit when the agreement was signed.

8

TEX. R. CIV. P. 245 (emphasis added). Here, the pertinent procedural history is as follows: (1) Charles and Meredith entered into the MSA; (2) Charles filed a petition for divorce, requesting rendition of judgment in accordance with the MSA's terms; (3) Meredith answered with a general denial; (4) Charles appeared in court one month later for the uncontested docket seeking entry of judgment on the MSA; and (5) at the conclusion of that brief hearing, the trial court rendered judgment. Meredith neither agreed to nor received notice of that hearing and therefore was not present when the trial court heard testimony and rendered judgment. Meredith thus did not receive the requisite notice under Rule 245.

Charles justifies this lack of notice by arguing that "at the time of rendition, this was not a contested case because the parties settled all their disputes by virtue of the MSA." In other words, according to Charles, the Highsmiths had already resolved all their issues when he appeared before the trial court, and rendition of judgment was merely a formality that did not require Meredith's presence. That argument misses the mark in several respects.

First, under the circumstances, the mere existence of the parties' settlement agreement does not characterize the proceedings as uncontested. Despite that agreement, Meredith responded to Charles's petition by filing an answer containing a general denial. In doing so, Meredith both made an appearance and placed "in issue" the matters raised in Charles's petition. *See* TEX. R. CIV. P. 92.[6] That filing moved the case into the "contested" category. *See Rogers v. Tex. Commerce Bank-Reagan*, 755 S.W.2d 83, 84 (Tex. 1988) (holding that a defendant who filed an answer denying the petition's allegations and asserting affirmative defenses was entitled to notice under Rule 245); *see also LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390,

---

[6] Rule 93 requires a verified denial for certain specified issues. TEX. R. CIV. P. 93. However, none of those issues are presented here.

9

390–91 (Tex. 1989) (reversing a default judgment rendered without notice to the defendant, who had made an appearance in the case by filing a motion to dismiss). Accordingly, Meredith was entitled to notice.

Further, while a hearing to prove up an MSA may often be uneventful, that is certainly not always the case: judgment on an MSA is not automatic. Parties challenging an MSA may still avail themselves of applicable statutory defenses or otherwise argue that the agreement should be set aside. Indeed, the fact that MSAs are frequently litigated, as here, illustrates that disputes may still arise post-execution. This is hardly surprising given the high-stakes, emotionally driven nature of family law cases. Thus, we cannot agree that once an MSA is signed, there is necessarily nothing left for the court to resolve, making the rendition of judgment a mere formality.

Most critically, a lack of notice violates basic principles of due process. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (explaining that a "[f]ailure to give notice violates the most rudimentary demands of due process of law" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965))). Due process demands that a party be afforded "an opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Applying those principles here, we hold that Meredith was entitled to notice of the hearing so that she could have the opportunity to contest the parties' MSA prior to rendition of judgment. *Rogers*, 755 S.W.2d at 84 (holding that a trial without notice to the appearing defendant violated the defendant's due process rights under the Texas Constitution). And the fact that Meredith challenged the MSA's enforceability in her post-judgment motions does not cure the

10

constitutional violation, as she was entitled to the opportunity to be heard at the initial hearing. *See Armstrong*, 380 U.S. at 550–52 (rejecting the argument that "whatever constitutional infirmity resulted from the failure to give the petitioner notice had been cured by the hearing subsequently afforded to him"); *see also Mosley v. Tex. Health & Human Servs. Comm'n*, ___ S.W.3d ___, ___ (Tex. 2019) ("[T]he remedy for a deprivation of due process is due process . . . .").

Finally, we disagree with Charles that Rule 245's notice requirement conflicts with section 6.602. To the contrary, they may and do coexist in harmony. *See Standard v. Sadler*, 383 S.W.2d 391, 395 (Tex. 1964) (explaining that where there is no clear repugnance between two statutes, they will each be construed so as to give effect, if possible, to both). Section 6.602 governs MSAs in divorce suits, while Rule 245 sets forth the general notice requirements for all litigants. Moreover, Rule 245 does not deprive a spouse of his or her right to entry of judgment on a statutorily compliant MSA; it simply requires that the other spouse be properly notified before that right to judgment is realized. We therefore see no conflict between the statute and rule at issue.

Because Meredith did not receive the notice to which she was entitled under both the Constitution and the procedural rules, the trial court erred in rendering judgment on the MSA in her absence, and we agree with the court of appeals that the case must be remanded. However, on remand, the parties and the trial court will be governed by our holding that a pending suit is not a prerequisite for a statutorily binding MSA. Accordingly, we grant Charles's petition for review, and without hearing oral argument, TEX. R. APP. P. 59.1, we affirm the court of appeals'

11

judgment in part, reverse it in part, and remand the case to the trial court for further proceedings consistent with this opinion.

**OPINION DELIVERED:** October 25, 2019