**Opinion issued January 20, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00371-CV

————————————

**EDWARD JOHN GLYNN, Appellant**

**V.**

**CYNTHIA KAY GLYNN, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. 18-FD-2643**

---

## O P I N I O N

This is an appeal from a final divorce decree signed on February 7, 2020. Edward Glynn and Cynthia Glynn agreed upon the terms of the divorce in a mediated settlement agreement signed December 16, 2019. On appeal, Edward contends that the trial court abused its discretion by signing a final divorce decree

that exceeded the scope of the mediated settlement agreement. Specifically, he challenges the documents attached as exhibits to the final decree, the requirement that he execute and sign them, and the authorization of a wage withholding order as a means of payment for contractual alimony. We affirm as modified.

## Background

Cynthia and Edward were married in May 1996 and ceased living together in October 2018. They did not have children. Cynthia petitioned for divorce in October 2018, and Edward counter-petitioned in November 2018. Each petition was amended before Cynthia and Edward entered into a binding, mediated settlement agreement ("MSA") on December 16, 2019. The MSA approved and signed by the parties and their attorneys states:

> This Mediated Settlement Agreement shall act as a shorthand rendition of the terms of the parties' agreement, and formal orders shall be prepared consistent with this agreement. If there are any disputes in drafting the agreement, the Texas Family Law Practice Manual, as amended, shall prevail relative to drafting disputes.
>
> . . . .
>
> Execution of Documents. Each party shall agree to appear at a designated time for purposes of executing all documents necessary to effectuate the Final Decree of Divorce. Such documents shall include but not limited to Special Warranty Deed, Deed of Trust to Secure Assumption, Qualified Domestic Relations Order, Quitclaim Deeds, Assignments of Escrow Funds, assignments of insurance coverage, utility deposits, certificates of title to automobile, power of attorney necessary to transfer automobile, signature cards on custodial accounts, stock transfer certificates, trust agreements, security agreements collateral pledge agreements, assignments of interest, and

2

other documents as reasonably necessary to effectuate the finality of this agreement.

. . . .

Exchange of Documents/Preparation of Paperwork

The anticipated documents necessary to finalize this case shall be as follows:

Decree, POA on vehicles, owelty lien, UCC filings, promissory notes for [$]1,300,000.

. . . .

The parties agree to contractual alimony of $1,300,00.00. This debt shall be paid beginning February 1, 2020 at $10,833.33 per month for 120 months.

The debt of $1,300,00.00 will be secured by an owelty lien on the Tiki house at 946 Long Reach Drive, Galveston, Texas 77554 and a security agreement/note regarding Integrated Systems Group Inc. business with UCC filing. In addition, Ed Glynn agrees to maintains his New England Life insurance policy and name Cynthia Glynn as the sole beneficiary up to the remainder owed under this agreement.

Additionally, the parties crossed out the portion of the MSA that would require them to return to the mediator to resolve drafting disputes, leaving the trial court to decide future drafting disputes. On December 2019, Cynthia and her counsel appeared to prove up the MSA and seek a rendition of judgment on its terms. The trial court granted a divorce and set a date for the entry of the decree.

On January 31, 2020, the court held a contested entry hearing regarding the form of the decree. Edward's trial counsel objected to two portions of the proposed decree. First, he objected that the lien on the marital residence should be in the

3

amount of $300,00.00 instead of $1,300,00.00. Second, he requested that a special warranty deed be drafted in addition to the owelty lien on the marital residence.[1]

Regarding the first objection, the trial court found that the MSA specifically stated that the lien amount would be $1,300,00.00, not $300,000. As to the second objection, Cynthia's counsel responded that a special warranty deed was unnecessary. The court ordered that the decree include an owelty lien with the conveyance.

In February 2020, the decree was signed by the trial court. It was approved as to form by both parties' counsel and approved as to both form and substance by Cynthia. On March 3, 2020, Edward moved for a new trial and to modify, correct, or reform the decree. He complained that the court's judgment erroneously included command language compelling him to execute ancillary documents and that the ancillary documents were erroneously attached as exhibits. He argued that the exhibits were not contemplated by the MSA nor agreed to by the parties. He also argued that the court imposed terms and conditions on him that were not part of the MSA, such as post-judgment interest on the contractual alimony, a partition agreement, a real estate lien, and a deed of trust. Edward filed a brief in support of

---

[1] Owelty is the difference in value that results when a court divides property into shares of unequal value in partition proceedings. *Sayers v. Pyland*, 161 S.W.2d 769, 772 (1942). The court may then order an owelty payment to equalize the shares' value and impose a lien on the greater share in favor of the recipient of the lesser share to secure the owelty payment. *See id.*

4

his motion that requested that at minimum, the trial court exclude all wage withholding language and exclude the owelty of partition agreement, real estate lien, and deed of trust which were attached as exhibits to the final decree.

Cynthia responded that Edward failed to show good cause for obtaining a new trial and failed to cite any judicial error in need of modification. Cynthia argued that the complained-of exhibits attached to the final decree were necessary to properly obtain an owelty lien to secure the $1,300,00.00 owed by Edward to Cynthia as contractual alimony. She argued that this was both permissible under Texas law and agreed upon by the parties in the MSA incorporated in the decree. Cynthia agreed that Exhibit C, the real estate lien note, erroneously included interest. She stated that the proper remedy was a motion for judgment nunc pro tunc.

The trial court denied Edward's motions and ordered that a nunc pro tunc order correct the real estate lien note to reflect that no interest accrued on the debt Edward owed Cynthia. Edward appealed. As of the time of appeal, the trial court has not entered the nunc pro tunc order.

Edward complains of two issues on appeal. First, he argues that the trial court abused its discretion by attaching transactional documents as exhibits to the final decree that were neither contemplated by the MSA nor agreed upon in advance. He also argues that the trial court abused its discretion by including

5

wording in the final decree that commands that he execute the documents. In his second issue, he argues that the trial court erred by including wage withholding as a means of collecting contractual alimony. We modify the judgment to remove interest from the real estate lien and to remove reference to wage withholding as a means of collecting contractual alimony. We affirm the judgment as modified.

**Exhibits Contemplated by the MSA**

On appeal, Edward asserts that the trial court abused its discretion by attaching several transactional instruments to the final decree because they were neither contemplated by the MSA nor agreed upon in advance. The exhibits he complains of are:

| | |
|---|---|
| Exhibit A | Owelty of Partition Agreement |
| Exhibit B | Owelty of Partition Deed |
| Exhibit C | Real Estate Lien Note |
| Exhibit D | Deed of Trust |
| Exhibit E | Security Agreement |

He also asserts that the trial court abused its discretion by attaching the exhibits to the decree and by commanding that he execute them in the final decree.

Cynthia responds that the exhibits were contemplated by the MSA and necessary to effectuate the security for full payment of contractual alimony. Cynthia argues that the MSA states that the parties agreed to follow the Texas

6

Family Law Practice Manual for drafting the final decree. The practice manual specifically contemplates attaching documents for the conveyance of property to the final decree as exhibits. She also argues that the language commanding Edward to execute the documents is as suggested by the practice manual. We agree with Cynthia.

## A.      Applicable Law and Standard of Review

It is well settled that an MSA that meets certain statutory formalities "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (citing TEX. FAM. CODE § 6.602(b)–(c)). Unlike other settlement agreements in the family law context, the trial court is not required to determine if the agreed property division is "just and right" before approving an MSA that satisfies the statutory requirements. *Highsmith v. Highsmith*, 587 S.W.3d 771, 775 (Tex. 2019). When the agreement complies with the statutory formalities, it is binding on the parties as soon as executed and a party is "entitled to judgment on the mediated settlement agreement not withstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE § 6.602(b)–(c). The parties do not dispute that the MSA contains the required formalities of Section 6.602 of the Family Code. *See id.*

A trial court must enforce an MSA that meets the statutory requirements unless a party demonstrates that the MSA was illegal or was procured by fraud,

7

duress, coercion, or other dishonest means. *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.). When parties reach a settlement agreement, the final judgment must be in strict or literal compliance with that agreement. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006) (per curiam) (citing *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam)). The law does not require that the parties agree to all of the terms necessary to effectuate the purposes of the agreement; it is necessary only that the parties reach an agreement as to all material terms. *McLendon v McLendon*, 847 S.W.2d 601, 606 (Tex. App.—Dallas 1992, writ denied). A judgment is not in "strict or literal compliance" with the terms of the agreement if it improperly removes or adds material terms. *Chisholm*, 209 S.W.3d at 98 (quoting *Vickrey*, 532 S.W.2d at 292). A trial court may modify the terms of a settlement agreement as long as the modifications do not add terms the parties have not agreed to, significantly alter the original terms, or undermine the intent of the parties. *Wallace v. McFarlane*, No. 01-10-00368-CV, 2013 WL 4507843, at *8 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op.).

The "proper inquiry . . . is not a mechanical examination of whether the divorce decree varies from the terms of the MSA. Rather the inquiry is whether variances by the trial court significantly alter the parties' written agreement in a way that deviates from the parties' intent as manifested in that agreement." *Davis*

8

*v. Davis*, No. 01-12-00701-CV, 2014 WL 890899, at *9 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.) If the decree adopts mechanisms to enforce the parties' agreement while remaining consistent with their intent, it is enforceable. *Id.*

Because an MSA is a contract, we look to general contract interpretation principles to determine its meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017); TEX. CIV. PRAC. & REM. CODE § 154.071(a) ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."). When construing a contract, the court must ascertain the intentions of the parties as expressed in the writing itself. *Loya*, 526 S.W.3d at 451 (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 333 (Tex. 2011)). The court gives terms "their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). If the words used in the written instrument can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Courts must enforce an unambiguous contract as written and may not consider extrinsic evidence for the purpose of creating an ambiguity or

giving the contract a meaning different from that which its language imports. *Id.* The parties do not argue that the MSA or decree are ambiguous.

**B.      Analysis**

We address each exhibit in turn:

**1.      Exhibit A: Owelty of Partition Agreement**

Edward contends that Exhibit A, an owelty of partition agreement, was not contemplated by the MSA. Cynthia responds that the document is necessary to effectuate the parties' agreement. We agree with Cynthia.

Exhibit A, the owelty of partition agreement, is in accordance with the MSA. The MSA approved and signed by the parties states that it shall "act as a shorthand rendition of the terms of the parties' agreement, and formal orders shall be prepared consistent with the agreement." In the MSA, the parties agreed that Edward would pay Cynthia contractual alimony of $1,300,00.00, paid in monthly installments for 120 months. The MSA states that the debt shall be secured by "an owelty lien on the Tiki House . . . and a security agreement/note regarding [Edward's business] with UCC filing."

The MSA contemplates the later creation and signing of ancillary documents necessary to effectuate the parties' agreement. The MSA states:

> Execution of Documents. Each party shall agree to appear at a
> designated time for purposes of executing all documents necessary to
> effectuate the Final Decree of Divorce. Such documents shall include
> but not be limited to Special Warranty Deed, Deed of Trust to Secure

10

Assumption, Qualified Domestic Relations Orders, Quitclaim Deeds, Assignments of Escrow Funds, assignments of insurance coverage, utility deposits, certificates of title to automobile, power of attorney necessary to transfer automobile, signature cards on custodial accounts, stock transfer certificates, trust agreements, security agreements, collateral pledge agreements, assignments of interest, and other documents as reasonably necessary to effectuate the finality of this agreement.

The MSA also states that the anticipated documents necessary to finalize the case include: "decree, POA on vehicles, Owelty Lien, UCC filings, promissory notes for [$]1,300,000" Finally, the MSA includes that the debt of $1,300,00.00 will be secured by an owelty lien against the Tiki house and a security agreement regarding Edward's business with UCC filing.

The language of the MSA clearly shows that the parties intended that additional documents would be drafted and signed by the parties in order to effectuate their agreement for property division. The MSA was not a final conveyance of any property.

Exhibit A merely restates and complies with the final decree language. The trial court did not significantly alter the parties' written agreement or deviate from their intent as manifested in the MSA. *Davis*, 2014 WL 890899 at *9. The trial court did not abuse its discretion in attaching Exhibit A to the final decree nor in ordering Edward to execute it, as both were contemplated by the MSA.

We overrule Edward's issue related to Exhibit A.

11

## 2. Exhibit B: Owelty of Partition Deed

Edward argues that Exhibit B was not contemplated by the MSA. Specifically he argues that the MSA contemplated a lien of $300,000 rather than $1,300,000 on the Tiki house. We disagree.

The parties clearly anticipated the possibility of two separate events regarding the house: a lien against the house and the sale of the house. Each event was tied to a different amount of money. The language in the MSA expressly states that the "[d]ebt of $1,300,000.00 will be secured by an owelty lien on the Tiki House . . . and a security agreement/note regarding [Edward's business] with UCC filing." The MSA does not contemplate that that lien is in the amount of only $300,000.

The only mention of $300,000 is in the last paragraph describing the parties' agreement for contractual alimony. It states, "Should Ed Glynn sell [the Tiki house], any sale proceeds of the house up to $300,000 will be applied to the remaining amount of [alimony] debt."

Exhibit B correctly states that a lien exists against the Tiki house in the amount of $1,300,000. The trial court considered the parties' arguments regarding this provision at both the entry hearing and the post-trial motion hearing. The trial court did not abuse its discretion in finding that Exhibit B states that the debt of

12

$1,300,000 will be secured by an owelty lien on the Tiki house as contemplated by the MSA.

To the extent Edward argues that owelty of partition deed was not in conformance with the MSA because it was not specifically listed in the MSA, the exhibits did not need to be specifically listed in the MSA to be in conformance with it. The MSA's "Execution of Documents" section states that the parties will appear to execute all documents necessary to effectuate the divorce. The section states that the documents "shall include but not be limited to [various documents]." This indicates the parties' agreement to create and sign additional documents to effectuate their agreement. Exhibit B is in "strict or literal compliance" with the MSA. *Chisolm*, 209 S.W.3d at 98.

We overrule Edward's issue related to Exhibit B.

### 3.    Exhibit C: Real Estate Lien Note

Edward argues that Exhibit C erroneously applies 6% interest on Edward's financial obligation to Cynthia. Cynthia concedes that the exhibit is erroneous and should not include interest on the contractual alimony as there was no agreement to interest in the MSA. The exhibit also conflicts with the final decree which states that the contractual alimony "shall bear interest at 0% percent per year . . . ."

At the motion for new trial hearing, the trial court ordered that Cynthia's attorney draft and circulate for entry a judgment nunc pro tunc to correct Exhibit C

and reflect that Edward's $1,300,000 debt did not bear interest. The record does not reflect that a judgment nunc pro tunc correcting this clerical error has been entered.

We modify the judgment, specifically the real estate lien note attached as Exhibit C to the judgment, to reflect that the contractual alimony bears no interest.

### 4.    Exhibit D: Deed of Trust

Edward contends that the inclusion of Exhibit D, a deed of trust, in the final decree was reversible error because it was not agreed to in the MSA and is "grossly overly broad." Specifically, he complains that its terms and conditions are contrary to the express provision of the MSA.

As discussed, the parties intended that additional documents, other than the MSA and decree themselves, would be drafted as necessary to effectuate the agreement reached in the MSA. The MSA's Execution of Documents section states "Each party shall agree to appear at a designated time for purposes of executing all documents necessary to effectuate the Final Decree of Divorce. Such documents shall include but not be limited to . . . Deed of Trust to Secure Assumption . . . ." The parties clearly contemplated that the deed of trust would be executed after the MSA and incorporated in the final decree. Additionally, the body of the final decree mentions that a deed of trust is to be signed to "further secure payment of the debt" owed by Edward to Cynthia.

14

Edward argues that the deed of trust prohibits him from selling the Tiki house without Cynthia's permission and that it adds costs and attorney's fees in the event of default. In his motion for new trial he stated that the deed of trust "contains numerous provisions, obligations, burdens and other impositions" that were contrary to the MSA. He then highlighted the sections of Exhibit D that he argued were erroneous.[2] The "proper inquiry" of whether a divorce decree varies from the terms of an MSA is whether the trial court significantly altered the parties' written agreement. *Davis*, 2014 WL 890899, at *9. The MSA states that it is "the shorthand rendition of the terms of the parties' agreement." The deed of trust and its specific terms are not in conflict with the MSA. The deed of trust is necessary to effectuate the parties' agreement regarding contractual alimony.

We overrule Edward's issue related to Exhibit D.

### 5. Exhibit E: Security Agreement

Edward argues that the scope and breadth of the security agreement are in conflict with the MSA. He argues that Exhibit E was incorrectly attached to the final decree and that neither of the parties agreed upon it in advance.

---

[2] Cynthia argues that Edward did not preserve this error for our review because his motion for new trial did not specifically explain his complaints regarding Exhibit D. While the body of his motion did not explain the specific provisions, he highlighted the provisions he believed were erroneous on the exhibit and submitted it as an attachment to his motion. The trial court was on notice of what specific provisions Edward was complaining of and thus, he preserved this issue for our review. *See* TEX. R. APP. P. 33.1.

Exhibit E, the security agreement, follows the MSA. The MSA states that the debt of $1,300,000 will be secured by several instruments. These instruments include "a security agreement/note regarding Integrated Systems Group Inc. business with UCC filing." The MSA also states that Edward will maintain a life insurance policy with Cynthia as sole beneficiary for whatever amount is owed of the $1,300,000.00 debt. According to the MSA, if Edward sells the business and starts a new business while his contractual alimony obligation remains outstanding, he will sign a security agreement regarding the new business. Finally, the MSA states that the anticipated documents to be drafted include "UCC filings, promissory notes for [$]1,300,000." The purpose of these documents is to put creditors and other third parties on notice of the debt. The parties agreed that Edward would execute a security agreement regarding his business and the contractual alimony obligation.

The trial court reviewed the exhibit at the entry hearing and through Edward's post-trial motions. The trial court did not err in deciding that Exhibit E complied with the MSA and effectuated the parties' agreement. *Davis*, 2014 WL 890899 at *9.

We overrule Edward's issue related to Exhibit E.

### 6. Documents Attached to Final Decree of Divorce and Decree's Command to Sign Them

Edward argues that the trial court abused its discretion in including closing documents as Exhibits A through E to the final decree and commanding Edward to execute them. We disagree. The MSA states that if there are drafting disputes, they will be resolved according to the *Texas Family Law Practice Manual*. *See M.B. v. R.B.*, No. 02-19-00342-CV, 2021 WL 2252792, at *1 n.1 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.) (stating MSAs often reference the forms published in the *Texas Family Law Practice Manual* as a means of their reduction to writing in a final decree). The final decree of divorce follows Form 23-1 from the *Texas Family Law Practice Manual*. *See* State Bar of Texas Family Law Section Council, *Texas Family Law Practice Manual* 166 (2020 ed.). The form instructs the drafter to "include if applicable; in the form attached to this Final Decree of Divorce as Exhibit [exhibit number/letter]." *Id.* The final decree follows the *Texas Family Law Practice Manual* and is in strict and literal compliance with the MSA. *Chisholm*, 209 S.W.3d at 98. The trial court did not abuse its discretion by including the documents as exhibits.

Similarly, the form for the decree in the *Texas Family Law Practice Manual* states: "[Name] is ORDERED to appear in the law offices of {name of attorney] at [location], at [time] on [date], and to execute, have acknowledged, and delivered to [name] these instruments: . . . ." *Texas Family Law Practice Manual* at 166. The

17

command language in the final decree is as suggested in the practice manual's form. The final decree states, "[Edward] is ORDERED to appear at County Court 2, 600 59th Street Galveston, Texas at 9:15 a.m. February 7,2020 and to execute, have acknowledged, and deliver to [Cynthia] these instruments: . . ." The language is in strict or literal compliance with the MSA. *Chisholm*, 209 S.W.3d at 98.

We overrule Edward's issue related to the inclusion of the exhibits and the command language to execute the documents in the final decree.

## Wage Withholding

In his second issue, Edward contends that the trial court abused its discretion when it ordered a wage withholding order to be issued for the purpose of enforcing the terms of contractual alimony. Cynthia responds that Edward did not preserve this issue for our review, but she does not object to removing this language from the final decree.

The final decree states "Payment Procedures—All alimony payments, except as provided otherwise, will be made by income withholding, personal check, money order, or cashier's check payable to [Cynthia]." At the entry hearing, Edward's counsel expressly stated that wage withholding was allowed by the MSA. Edward did not specifically mention wage withholding in his motion for new trial. Instead, he more generally stated that the court's judgment impermissibly imposed terms and conditions on him that were not part of the

MSA. His brief in support of his motion mentions the error of including wage withholding.

We need not decide whether he preserved this issue for our review as Cynthia reiterates on appeal that she has no objection to eliminating references to wage withholding from the decree. She also proposed deleting wage withholding in the proposed judgment nunc pro tunc.

We modify the decree to eliminate wage withholding as a means of collecting the contractual alimony.

## Conclusion

We modify the final decree of divorce, specifically the real estate lien note attached as Exhibit C, to reflect that the contractual alimony bears no interest. We also modify the decree to remove wage withholding as a means of payment for contractual alimony. We affirm the trial court's decree as modified.


Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Landau.

19