In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00028-CV

_____

**FRANCES MORENO LEBLANC, Appellant**

**V.**

**LARRY JULES LEBLANC JR., Appellee**

On Appeal from the 317th District Court
Jefferson County, Texas
Trial Cause No. C-233,639

**MEMORANDUM OPINION**

Frances Moreno LeBlanc appeals from a judgment entitled Agreed Final

Divorce signed on January 14, 2020, in her divorce from Larry Jules LeBlanc Jr.[1]

Frances and Larry have two minor children. In one issue on appeal, Frances argues

the trial court erred in rendering a decree of divorce that does not strictly comply

---

[1] As both parties have the last name LeBlanc, we will refer to them by their
first names.

with the Meditated Settlement Agreement (MSA) they reached in settling the terms of their divorce.[2] Specifically, Frances complains the trial court's order "adds terms and incorporates an entirely different holiday visitation schedule than in the MSA *and* violates the 'Holidays Every Year' MSA provision that '[m]other has possession at all times not specifically awarded to father.'" As explained below, we reverse the order of the trial court and remand.

## Background

Both Frances and Larry were represented by counsel during their divorce. Frances filed for divorce in 2018. Temporary orders were issued in the divorce in February 2019. In October 2019, Frances asked the trial court to order the parties to mediation. On October 23, 2019, the parties filed an Irrevocable Mediated Settlement Agreement with the clerk's office. The MSA is signed and initialed on each page by the parties, and their counsel signed the agreement's last page. The MSA contains the following information on holiday visitation.

> Holidays Every Year:
>> Thanksgiving:
>>> Father 3:00 pm – 8:00 pm on Thanksgiving Day
>>> Mother 8:00 am – 3:00 pm on Thanksgiving Day
>> Christmas:
>>> Father December 24 8:00 am – 10:00 pm
>>> Mother [December 24] 10:00 pm – [December 26] 8:00 am
>> Father's Day, Mother's Day, Child's Birthday:
>>> Per Family Code

---

[2] Larry was not represented by counsel on appeal and did not file a pro se brief.

<u>Easter Sunday:</u> Mother every year
Mother has possession at all times not specifically awarded to father.

On January 14, 2020, the trial court held a hearing to consider signing a final decree. Frances and Larry filed different versions of the decree and the holiday schedule. After hearing the arguments of counsel, the trial court announced he was changing the decree as follows:

> Well, I will note Easter Sunday mother -- every year mother has possession at all times not specifically awarded to the father. There is no statement like that having to do with Christmas. Usually the Easter holidays are longer. The ones that are -- say per the Family Code are usually one day or shorter. It's Father's Day, Mother's Day, and child's birthday. Those are very short holidays. The other holidays are longer.
> Like I said, Easter says, mother shall have possession at all times specifically awarded; and Christmas holiday says specific times and doesn't – for the mother it's 12-24, 10:00 p.m., to 12-26 at 8:00 a.m. It doesn't have the clause, mother has possession at all times not specifically awarded to the father.
> It would appear that he should have – that each one of them would have -- other than this carved out time, which gives basically every Christmas Day and -- 10:00 p.m. Christmas Eve through Christmas Day to the next morning to mother. But it doesn't, as I said, contain language that says, mother shall have possession at all times not specifically awarded to the father.
> Therefore, I believe that [Larry's] decree is correct; and I'm going to sign it. That's my interpretation of the decree -- I mean, of the settlement agreement.

> …

> It doesn't make any difference what she thought or was doing. I mean, that's my interpretation of it and I -- like I said, [Frances's attorney] says it doesn't say standard. Well, it can't say standard. It's not standard because there's specific times cut out.

3

But it also doesn't say, mother gets all times that the father doesn't get which is a specific statement that will cut him out of the time that he might ordinarily have.

The trial court signed the version of the decree Larry filed with the court. As to the holiday schedule, it provides:

(e) Holiday Schedule

Notwithstanding the above ordered periods of possession for LARRY JULES LEBLANC, JR., FRANCES MORENO LEBLANC and LARRY JULES LEBLANC, JR. shall have the right to possession of the child as follows:

1. Christmas Holidays in Even-Numbered Years–In even-numbered years, LARRY JULES LEBLANC, JR. shall have the right to possession of the child beginning at the time the child's school is dismissed for the Christmas school vacation and ending at noon on December 28, and FRANCES MORENO LEBLANC shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 P.M. on the day before school resumes after that Christmas school vacation.

Notwithstanding the above ordered Christmas holiday period of possession for LARRY JULES LEBLANC, JR., in even-numbered years FRANCES MORENO LEBLANC shall have the right to possession of the child beginning at 10:00 P.M. on December 24 and ending at 8:00 A.M. on December 26, provided that FRANCES MORENO LEBLANC picks up the child from LARRY JULES LEBLANC, JR.'s residence and returns the child to that same place.

2. Christmas Holidays in Odd-Numbered Years–In odd-numbered years, FRANCES MORENO LEBLANC shall have the right to possession of the child beginning at the time the child's school is dismissed for the Christmas school vacation and ending at noon on December 28, and LARRY JULES LEBLANC, JR. shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 P.M. on the day before school resumes after that Christmas school vacation.

4

Notwithstanding the above ordered Christmas holiday visitation for FRANCES MORENO LEBLANC, in odd-numbered years LARRY JULES LEBLANC[, Jr.] shall have the right to possession of the child beginning at 8:00 A.M. on December 24 and ending at 10:00 P.M. on that day, provided that LARRY JULES LEBLANC, JR. picks up the child from FRANCES MORENO LEBLANC's residence and returns the child to that same place.

3. Thanksgiving in Odd-Numbered Years–In odd-numbered years, LARRY JULES LEBLANC, JR. shall have the right to possession of the child beginning at the time the child's school is dismissed for the Thanksgiving holiday and ending at 6:00 P.M. on the Sunday following Thanksgiving, except that FRANCES MORENO LEBLANC shall have the right to possession of the child on Thanksgiving Day beginning at 8:00 A.M. and ending at 3:00 P.M. on that day, provided that FRANCES MORENO LEBLANC picks up the child from LARRY JULES LEBLANC, JR.'s residence and returns the child to that same place.

4. Thanksgiving in Even-Numbered Years–In even-numbered years, FRANCES MORENO LEBLANC shall have the right to possession of the child beginning at the time the child's school is dismissed for the Thanksgiving holiday and ending at 6:00 P.M. on the Sunday following Thanksgiving, except that LARRY JULES LEBLANC, JR. shall have the right to possession of the child on Thanksgiving Day beginning at 3:00 P.M. and ending at 8:00 P.M. on that day, provided that LARRY JULES LEBLANC, JR. picks up the child from FRANCES MORENO LEBLANCs residence and returns the child to that same place.

5. Child's Birthday–If a conservator is not otherwise entitled under this Possession Order to present possession of a child on the child's birthday, that conservator shall have possession of the child and the child's minor siblings beginning at 6:00 P.M. and ending at 8:00 P.M. on that day, provided that that conservator picks up the children from the other conservator's residence and returns the children to that same place.

6. Father's Day–Father shall have the right to possession of the child each year, beginning at 6:00 P.M. on the Friday preceding

Father's Day and ending at 6:00 P.M. on Father's Day, provided that if Father is not otherwise entitled under this Possession Order to present possession of the child, he shall pick up the child from the other conservator's residence and return the child to that same place.

7. Mother's Day–Mother shall have the right to possession of the child each year, beginning at the time the child's school is regularly dismissed on the Friday preceding Mother's Day and ending at 6:00 P.M. on Mother's Day, provided that if Mother is not otherwise entitled under this Possession Order to present possession of the child, she shall pick up the child from the other conservator's residence and return the child to that same place.

8. Easter Sunday Every Year–FRANCES MORENO LEBLANC shall have the superior right to possession of the child beginning at 8:00 A.M. on Easter Sunday and ending at 6:00 P.M. that same day.

(f) Undesignated Periods of Possession

FRANCES MORENO LEBLANC shall have the right of possession of the child at all other times not specifically designated in this Possession Order for LARRY JULES LEBLANC, JR.

Frances timely filed this appeal.

**Issue One**

In her sole issue, Frances argues that the trial court erred when it signed Larry's version of the proposed divorce decree, complaining that it does not comply with the MSA. She contends the decree the trial court signed adds terms and incorporates schedules for holidays that differ from those in the MSA and complains it violates the parties' settlement agreement by changing the holidays Frances bargained for in the MSA, an agreement that provides she is to have all time in the holidays the MSA addresses unless that time is specifically awarded to Larry.

6

**Standard of Review**

**A. Law Pertaining to MSAs**

An MSA meeting the statutory requirements in the Texas Family Code "is binding on the parties and requires the rendition of a divorce decree that adopts the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012) (citing Tex. Fam. Code Ann. § 6.602(b)–(c)). The relevant section of the Family Code provides:

> (b) A mediated settlement agreement is binding on the parties if the agreement:
>
> > (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> > (2) is signed by each party to the agreement; and
> > (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.
>
> (c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

Tex. Fam. Code Ann. § 6.602(b)–(c). Several of our sister courts of appeals have interpreted these provisions to mean that a trial court is not required to enforce an MSA if it is illegal or procured by fraud, duress, coercion, or other unlawful means. *See Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.); *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied); *In re Marriage of Joyner*, 196 S.W.3d 883, 890 (Tex. App.—Texarkana 2006, pet. denied); *Boyd v. Boyd*, 67 S.W.3d 398, 403–05 (Tex. App.—Fort Worth

2002, no pet.); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). That said, the Texas Supreme Court has not addressed whether the exceptions recognized by these intermediate courts in cases where the MSA has been procured by duress, fraud, coercion or by unlawful means renders an otherwise statutorily compliant MSA unenforceable. *See Milner*, 361 S.W.3d at 619 (noting in an MSA case, the Court would "leave the applicability of those defenses for another case"); *see also Highsmith v. Highsmith*, 587 S.W.3d 771, 777 n.5 (Tex. 2019) ("As in *Milner*, we need not and do not address whether an MSA that complies with the statutory formalities may nevertheless be set aside on the ground that it is illegal or was procured by fraud, duress, or coercion.").

We further note that section 153.0071(b) does not give trial courts the authority to reject an MSA on the grounds that the settlement is not in the best interest of the child. *See In re Lee*, 411 S.W.3d 445, 455 (Tex. 2013) (holding that section 153.0071(e) "encourages parents to peaceably resolve their child-related disputes through mediation by foreclosing a broad best interest inquiry with respect to entry of judgment on properly executed MSAs").

> [S]ection 153.0071(e) reflects the Legislature's determination that it is appropriate for parents to determine what is best for their children within the context of the parents' collaborative effort to reach and properly execute an MSA. This makes sense not only because parents are in a position to know what is best for their children, but also because successful mediation of child-custody disputes, conducted within statutory parameters, furthers a child's best interest by putting a halt to potentially lengthy and destructive custody litigation.

*Id*. at 454. In *Lee*, the Texas Supreme Court determined that the MSA statute was written for parents to determine their children's best interest and the trial court must defer to the parents and their agreement. *See id*. at 455; *see also In re Marriage of Harrison,* 557 S.W.3d 99, 138 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("[A] trial judge has no discretion to refuse to enter judgment on an MSA based solely on the court's determination that the agreed custody terms are not in the child's best interest because Family Code section 153.0071 does not grant trial courts the option to deny judgment on that basis.").

Since an MSA is a contract, general contract-interpretation principles determine its meaning. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017). The question of whether a contract is ambiguous is one of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (citing *Coker*, 650 S.W.2d at 393).

The Court's task is to "'ascertain the true intentions of the parties as expressed in the writing itself.'" *Loya*, 526 S.W.3d at 451 (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). We begin with the contract's express language, and "'examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none

9

will be rendered meaningless.'" *Murphy Expl. & Prod. Co.—USA v. Adams,* 560 S.W.3d 105, 108 (Tex. 2018*)* (quoting *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006)). In our analysis, "[w]e give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Loya*, 526 S.W.3d at 451 (quoting *Heritag*e, 939 S.W.2d at 121). Our presumption is that "the parties to a contract intend every clause to have some effect." *Heritage,* 939 S.W.2d. at 121, (quoting *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 331 (Tex.1983)). An unambiguous contract will be enforced as written. *Id*. (citations omitted).

**Analysis**

No party has asserted that the MSA was procured by "fraud, duress, coercion, or other dishonest means." *See Morse*, 349 S.W.3d at 56. The MSA is signed by both parties and their attorneys, and it has a prominently displayed statement, in boldface and capitalized letters, stating the MSA is "an AGREEMENT NOT SUBJECT TO REVOCATION" and is a "BINDING Mediated Settlement Agreement." *See In re Lee*, 411 S.W.3d at 458-59 (explaining the trial court abused its discretion by not complying with the MSA because the MSA was signed by the parties, contained bold, capitalized, underlined language it was irrevocable, and no testimony showed there was family violence); *see also* Tex. Fam Code Ann. § 153.0071.

Larry did not file a brief in the appeal, and while he was in the trial court, he never claimed the MSA is ambiguous. While the MSA could have been more detailed than it is as to the holiday schedule, its terms are not ambiguous.

The MSA is a combination of changes the parties placed in the agreement by writing on a document someone prepared as a draft, which the parties then finalized without retyping it and by placing their initials by the language they changed in the draft. The parties then approved the document by signing the last page. Counsel signed that page too.

Exhibit B to the MSA is the section of the agreement at issue here. It sets out possession and access the parties bargained for in a hand-written schedule, which is unlike standard visitation schedules typically contained in final decrees. Exhibit B is written by using brief descriptive fragmented sentences. The various holidays, including summers and spring breaks, provide periods of visitation inconsistent with the holiday schedule suggested when a trial court orders standard visitation schedules to be followed in regard to the parent's right to their children under the Texas Family Code. Each holiday is underlined and indented from the left margin, setting it apart as a different period of possession. At the end of the holiday period and in marginalia the left margin of the agreement, the agreement states: "Mother has possession at all times not specifically awarded to father."

11

The trial court interpreted the last provision in Schedule B of the MSA to apply to Easter only and not to any of the other holidays. However, a plain reading of the document indicates the parties intended the "not specifically awarded to father" provision in the holiday schedule to apply to all holidays. Thus, under the terms of the MSA, the bargain Mother and Father struck gave Mother greater rights than those the trial court gave her in the final decree. *See In re C.W.W.*, No. 05-15-00960-CV, 2016 WL 3548036, at *3 (Tex. App.—Dallas June 28, 2016, no pet.) (mem. op.) (analyzing a handwritten provision of MSA emphasis and meaning in regard to the other terms of the MSA); *see also Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (citations omitted) (explaining that in contract interpretation "'[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions'"). Because the Agreed Final Decree of Divorce rendered by the trial court does not track the terms of the MSA, we hold the trial court abused its discretion by signing a final decree that is inconsistent with terms of the MSA. We sustain Frances's sole issue.

**Conclusion**

Having sustained Frances's argument, we reverse the trial court's judgment as it relates to the Holiday Schedule, and remand the case to the trial court with instructions that it issue a final decree that complies with the parties' MSA as to the Holiday Schedule in Exhibit B to the MSA the parties signed on October 21, 2019.

12

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on April 13, 2021
Opinion Delivered January 27, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.